BANKERS SAVINGS & LOAN CO. *v.* BETTER BUSINESS DIVISION ATLANTA CHAMBER OF COMMERCE *et al.* GORMLEY, superintendent of banks, *v.* THE SAME.

*Ralph R. Quillian, Dillon, Calhoun & Dillon, Boyd Sloan,* and *Otis L. Hathcock,* for plaintiffs in error.

*Anderson, Crenshaw & Hansell* and *Carl N. Davie,* contra.

Beck, P. J. These two cases both arose out of a single case wherein the Better Business Division of the Atlanta Chamber of Commerce applied to the superior court for a writ of mandamus against the State superintendent of banks, to compel him to take under his jurisdiction and supervision Bankers Savings & Loan Company. Bankers Savings & Loan Company was joined as a party defendant in the lower court, because it was directly and vitally interested in the outcome of the litigation. Both defendants filed general demurrers, upon the overruling of which they filed separate bills of exceptions. The application for mandamus set out that the Bankers Savings & Loan Company was chartered by the superior court and was operating in Atlanta a business which should properly come under the jurisdiction and supervision of the State banking superintendent. The activities of the Bankers Savings & Loan Company were carried on in quarters arranged exactly like a bank, with cashier's windows, counters, and checks supplied by the defendant to its customers and found lying about on its counters, exactly like ordinary checks of any bank, with the usual blank spaces to be filled in, and with the name "Bankers Savings & Loan Company" inserted in the place where the name of a bank is usually found. Bankers Savings & Loan Company had in large signs on its windows the words "Industrial Banking," "Loans," "Savings," "Savings Certificates," and maintained several signs in which the Bankers Savings & Loan Company was referred to as a bank. The allegations of the petition describe in considerable detail these signs. In one of the signs Bankers Savings & Loan Company referred to itself as "this bank." In another it advertised that "a bank account here" will help to pave the way to success. It advertised that 5% and 6% was paid on savings, with 100% safety for money and "withdrawal on demand." Bankers Savings & Loan Company

issued to its customers a pass-book which is set out as an exhibit to the petition for mandamus, in which pass-book Bankers Savings & Loan Company is in several places referred to as a bank. Its customers are referred to as depositors. The book is referred to as a pass-book, and withdrawals are to be made on checks or orders in writing. The amounts standing to the credit of a customer are referred to as deposits.

The violations by Bankers Savings & Loan Company of the banking act are set forth in detail in the petition for mandamus. In brief, violations are alleged to be that the defendant is maintaining a sign having thereon a name importing that it is a bank; that it uses in its signs, names, and advertisements the words "bankers," "banking," "industrial banking," "savings," "loans," and "deposits," indicating that it is a regular chartered bank. It is alleged to be conducting a banking business without having secured the permission of the superintendent of banks. The violations of the law committed by Bankers Savings & Loan Company were brought to the attention of the superintendent of banks, and he was requested to perform his duty and compel a compliance by Bankers Savings & Loan Company with the law, and he failed, after demand, to force this compliance by Bankers Savings & Loan Company. The alleged failures of the superintendent of banks to perform the duties imposed by the statute are set out in detail in the petition, wherein it is alleged, in brief, that the superintendent is required to list all banks in his annual report, but he has not listed the Bankers Savings & Loan Company; that he is required to make a summary of the condition of every bank and semi-annual investigation of every bank subject to his supervision, but has failed to include a summary of the condition of Bankers Savings & Loan Company or to make the semi-annual investigation; and that he has not made any investigation of the Bankers Savings & Loan Company since it commenced business. The superintendent is alleged to be charged with the duty of taking over banks operating in violation of the banking laws; and he has failed to take possession of Bankers Savings & Loan Company, although it has violated the law in the respects above stated. The defendants relied upon three propositions chiefly. The first was, that the petitioner for mandamus was not entitled to maintain the action; the second was that Bankers Savings & Loan Company was not engaged in any

activities which require the superintendent of banks to take possession; and finally, that the superintendent could not be compelled to take over the supervision, examination, etc., of Bankers Savings & Loan Company.

■ We are of the opinion that the petitioner for mandamus was entitled to maintain the action. The question involved was one of public. and not mere private, interest. In *Board of Commissioners* v. *Montgomery*, 170 *Ga.* 361 (153 S. E. 34), it was said: "The principle that it is an essential requisite of an application for mandamus to enforce a right that it allege pecuniary loss to the plaintiff for which he can not be compensated in damages *(Atlantic Ice & Coal Corp.* v. *Decatur,* 154 *Ga.* 882, 115 S. E. 912), is applicable only to the enforcement of private rights." In *Atlanta Title & Trust Co.* v. *Tidwell,* 173 *Ga.* 499 (160 S. E. 620, 80 A. L. R. 735), a similar ruling was made, it being held: "Where the question is one of public and not mere private right, and the object of mandamus is to enforce performance of a public duty, the relator need not show that he has any legal or special interest in the result; it being sufficient that he is interested in having the law executed and the duty enforced. *Board of Commissioners of Manchester* v. *Montgomery,* 170 *Ga.* 361 (2) (153 S. E. 34); *Plainfield Consolidated School District* v. *Cook,* 173 *Ga.* 447 (160 S. E. 617). In the instant case the several questions were as to public, and not mere private right, except the question relating to notations by the Atlanta Title and Trust Company on original instruments lodged with the clerk of the superior court for record, as alleged in paragraph 9 of the petition. That question related to a private right affecting only the owner of the paper lodged for record. The petition did not allege the making of a notation on a paper lodged by the petitioner with the clerk to be recorded." Under the doctrine laid down in the cases referred to above, we are of the opinion that the petitioner in this case could maintain this action.

■ We are further of the opinion that the court did not err in overruling that part of the general demurrer which insists that the petition fails to set out or show that the Bankers Savings & Loan Company is conducting a banking business as defined by the laws of the State of Georgia, in such a manner as to subject the defendant to the supervision of the banking department of the State of Georgia by and through its superintendent of banks; and further that

such petition fails to show that this defendant is conducting a banking business of any nature, as defined by the laws of Georgia. Gormley, superintendent, insists in his demurrer that the Bankers Savings & Loan Company has no right to conduct a general banking business, and that he is only charged by law with the supervision and regulation of such banks as are legally organized and authorized by law to conduct a banking business. In section 1, article 1 of the act to regulate banking in the State of Georgia (Georgia Laws 1919, p. 135), it is provided: "The term 'bank' as used in this act means any moneyed corporation authorized by law to receive deposits of money and commercial paper, to make loans, to discount bills, notes, and other commercial paper, to buy and sell bills of exchange, and to issue bills, notes, acceptances, or other evidences of debt, and shall include incorporated banks, savings banks, banking companies, trust companies, and other corporations doing a banking business in this State, but shall not include private bankers, copartnership or voluntary associations doing a banking business, or national banking associations, or building and loan associations, or similar associations or corporations." It is alleged in the petition that the defendant company is a corporation organized under the laws of the State of Georgia; that the charter of the company was granted by the superior court; and that the order of incorporation was dated October 13, 1931. It is not necessary for us to take up the question whether or not a charter granted by the superior court could give to the corporation the power to carry on a banking business, or whether it is necessary that a banking company be incorporated only by the Secretary of State. The company in question here has been incorporated, and under the allegations in this petition it is doing a banking business. It does not require argument to show that this is true; a reference to the facts appearing in the record shows beyond question that it is doing a banking business, and falls within the expression as used in that section and paragraph of the banking act referred to, to wit, any "other corporation doing a banking business in this State." And they are not mere private bankers. There are numerous signs and indicia about its office and place of business to indicate the business which is being carried on. It is true that one of these signs is in this language: "Private Bank—Not Incorporated;" but it is distinctly alleged in the petition that the company is incorporated, and there

are numerous indicia in the office, consisting of signs, placards, cards, and ordinary checks, showing that it is doing a banking business. And if it is a corporation doing a banking business and doing business generally with members of the public who have money to deposit, and in almost every conceivable way is inviting members of the public to deposit their money in that bank, it is not a mere private bank. And consequently we have reached the conclusion that the judge properly overruled that ground of the demurrer contending that the petition fails to set out or show wherein the defendant corporation is conducting a banking business, as defined by the laws of the State of Georgia, in such a manner as to subject the defendant to the supervision and control of the banking department of the State, by and through its superintendent of banks. And this conclusion is authorized under the facts and the banking laws creating and regulating banking in the State of Georgia, even though the bank may not be conducting its business legally under any charter properly procured.

In view of the facts, the defendant can not set up its illegal acts to remove itself without the supervision of the banking department and the superintendent of banks. It would be a strange omission in the general banking laws under consideration, if a corporation should be permitted to carry on a banking business in violation of law, and yet not fall within the control or supervision of the superintendent of banks, under the powers, wide and presumably complete, which are conferred upon that officer by the act regulating banks. If such a banking institution as Bankers Savings & Loan Company does not fall within the supervision of the superintendent of banks, what protection has the public against any corporation procuring a charter, when it proceeds to do a banking business, invites the confidence of the public, secures large deposits, and in various ways holds itself out as a banking corporation? In the Code of 1910, § 5440, it is provided that "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." But it is contended by plaintiffs in error that if the section of the State banking act making the superintendent of banks subject to mandamus is compared with the Code section just quoted, it will be

340

seen that the terms of the banking law as enacted by the legislature limit and restrict the right to maintain an action of mandamus against the superintendent of banks; such right being limited to those affected by his refusal to perform the acts which it is sought to compel. The section of the banking act here referred to is as follows: "In the event the superintendent of banks should refuse to issue any permit authorizing the incorporation of any bank, or the amendment, renewal, or surrender of the charter of any bank, or authorizing any bank to begin business, or any other permit, authority, or certificate required to be given or furnished by him before any act or thing shall be permitted or done, or should refuse to do any act or thing authorized or required by this act to be done, the person or persons affected by such failure or refusal, or the bank so affected, may institute appropriate proceedings in the nature of a mandamus against the superintendent in the superior court of the county in which such bank is sought to be incorporated, to compel him to issue such permit or authority, or to do any such act or thing authorized or required to be done hereunder, which proceeding shall be tried as in other cases of mandamus. Service of such proceeding shall be made on the superintendent of banks by second original as now prescribed by law." Ga. L. 1919, p. 187, art. 16, sec. 1. We do not think that this section of the banking act has the effect ascribed to it by the plaintiffs in error. It refers to the right to have proceedings in the nature of a mandamus in respect to such matters and duties as are referred to in that section, but it does not limit the provisions of section 5440 of the Code. In view of what is said above, we have reached the conclusion that the court did not err in overruling the general demurrer.

*Judgments affirmed. All the Justices concur.*