### 24121. CONLEY *v.* THE STATE.

DECIDED JANUARY 15, 1935.

*Francis Y. Fife, John F. Echols,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

GUERRY, J. The indictment in this case charges that G. C. Conley did sell to C. W. Hewey securities coming within class "D" as defined in the Georgia securities law, said securities being nine shares (fully paid and nonassessable), of the value of twenty dollars each, of the preferred stock of the Bankers Savings and Loan Company, without first having obtained a license to sell and offer for sale said securities in accordance with the provision of the Georgia securities law, the accused acting in said transaction as a dealer in said shares of stock. A verdict of guilty was returned, and the defendant excepts to the overruling of his motion for a new trial.

The evidence discloses that these shares of stock were bought by

Hewey under a written contract of sale or purchase, signed by the defendant as solicitor. Conley was vice-president and treasurer of the Bankers Savings and Loan Company. The stock sold to Hewey was shown to be stock that had originally been issued to Mrs. Lillian Claughton, and when sale was made by Conley the stock was transferred from the stock issued to Mrs. Lillian Claughton by Bankers Savings and Loan Company. This transaction and sale was one of several others of a similar kind in which stock that had been issued to Mrs. Lillian Claughton was sold to other named parties. It was testified that this stock was a class "D" security, and that no license has been issued to the defendant for the sale or handling thereof as a dealer. It is insisted by the defendant that the stock was not handled by him as a dealer, but as an officer of the Bankers Savings and Loan Company, as issuer. It becomes necessary to determine whether or not Conley, the defendant, in selling this stock to Hewey, and, as showing a general scheme, to others, was acting as agent for the Bankers Savings and Loan Company as issuers of the stock, or as an agent or dealer for Mrs. Lillian Claughton. In the case of *Smith* v. *State,* 161 *Ga.* 103 (129. S. E. 766), it was held that, the word "issuer" not having been included in the caption of the act of 1920, the act was not applicable thereto, the act applying to dealers in securities and their agents alone. In *Felton* v. *Highlands Hotel Co.,* 165 *Ga.* 598, 618 (141 S. E. 793, 57 A. L. R. 987), it was held that this exemption as to issuers ceases when such issuers became dealers. The term "dealer," as defined in the act of 1922 (Ga. L. 1922, p. 158), shall be deemed to include any person selling or offering to sell or dispose of any such securities through agents or otherwise, such sale or offer to sell being prima facie evidence that securities were offered or sold "for the purpose of defrauding the purchaser."

The evidence adduced at the trial was sufficient to support the verdict rendered that Conley was a dealer in handling the transaction, rather than an officer of the issuing company. Hewey purchased the stock at the place of business of the company, but this did not take from the transaction its character as being that of a dealer or agent acting for another rather than the Bankers Savings and Loan Company. This sale, as well as other sales made, showed that they were a part of a general scheme or plan to sell and dispose of stock issued to and belonging to Mrs. Lillian Claughton. If this

stock were placed with defendant to be sold by him, it does not, because he is an officer of the company, make his capacity in selling the stock that of an issuer rather than dealer.

Neither does the fact that the Supreme Court in *Bankers Savings and Loan Co.* v. *Better Business Division,* 177 *Ga.* 334 (170 S. E. 291), held that such company, having held itself out to the public as a bank and having obtained a charter from the superior court and having actually carried on a banking business, was subject to supervision and regulation by the Banking Department of the State of Georgia, make Conley in the present transaction an agent for the issuer. It is insisted that since the act provides that securities "issued by any bank or trust company or insurance company operating under the supervision of the insurance commissioner of this State" are in class "A," the stock described and sold was in class "A" and not in class "D." In the *Better Business Division* case just cited a mandamus was sought to compel the State superintendent of banks to take under his jurisdiction and supervision the affairs of the Bankers Savings and Loan Company. This effort was resisted by the Bankers Savings and Loan Company on the ground that the superintendent of banks is only charged by law with the supervision and regulation of such banks as are legally organized and authorized by law to conduct a banking business. Under the banking law (Ga. L. 1919, p. 135; Michie's Code, § 2366(80)) an application for charter of a bank must be filed with the secretary of State and after complying with the provisions set out, among other things being the approval of the superintendent of banks of such application after due investigation made, the secretary of State may issue his certificate of incorporation therefor. It appears that no such certificate was issued to the Bankers Savings and Loan Company, but that it was incorporated by the superior court. In the opinion it was said: "In view of the facts, the defendant can not set up its illegal acts to remove itself without the supervision of the banking department and the superintendent of banks. It would be a strange omission in the general banking laws under consideration, if a corporation should be permitted to carry on a banking business in violation of law, and yet not fall within the control or supervision of the superintendent of banks, under the powers, wide and presumably complete, which are conferred upon that officer by the act regulating banks."

With equal force it may be said that a business conducted as a bank and in the name of a bank, which has utterly failed to comply with the provisions of the law with reference to the obtaining of a charter to conduct such business, will not operate to grant immunity to its officers who sell as dealers the preferred stock of such alleged bank by placing such stock in the class "A" list of securities. It would be trifling with the letter and purpose of the law to say that because a corporation which has been doing a banking business without complying with the provisions of the law therefor and has been adjudged answerable to the supervision and control of the superintendent of banks is thus made such a bank as will place its securities and stocks in class "A" of the securities act. This would be permission granted to a defendant to take advantage of his own wrong. This is a criminal statute and is to be strictly construed, but the interpretation adopted in the *Better Business Division* case cited above is not applicable to the facts of the present case.

There was ample evidence introduced to show that Claughton, a joint defendant, was acting with this defendant in carrying out a general scheme, and statements made by Claughton in such capacity are admissible in evidence against this defendant. It was not error for the court to fail to more fully define the word "dealer," without a written request therefor. Words are given their ordinarily understood meaning, and the charge in this respect was clear and understandable. The other special grounds in the motion for a new trial are without merit.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*