25751. GORMLEY, superintendent, *et al. v.* STATE OF GEORGIA, for use, etc.

DECIDED NOVEMBER 7, 1936. REHEARING DENIED DECEMBER 12, 1936.

844

*Dave M. Parker, Bonneau Ansley, Bryan, Middlebrooks & Carter,* for plaintiffs in error.

*Poole & Fraser,* contra.

GUERRY, J.  The State of Georgia, for the use and benefit of Eva Horne, instituted suit against R. E. Gormley, superintendent of banks, and the United States Fidelity and Guaranty Company as surety on his official bond.  The petition alleged:  On October 13, 1931, the Bankers Savings and Loan Company was chartered by the superior court of Fulton County (this charter is attached to the petition as an exhibit).  In October, 1931, the Bankers Savings and Loan Company opened its offices in Atlanta, Georgia.  It openly conducted and carried on a general banking business, displaying in its windows signs such as: "Industrial Banking," "Savings Certificates," "Withdrawals on demand," "Six per cent. on Savings," "Be a fortune builder with a savings account —open one to-day;" displaying in its place of business printed papers, stationery, checks, and pass-books, containing and having printed thereon the words, "Bank," "Bankers," "Savings," "Deposits," "Depositors," "Interest," "Withdrawals," "Balance," "Interest will be allowed on sums to the credit of each depositor," "Withdrawals will, as a rule, be made on demand," "This bank reserves the right to require sixty days notice in writing of its intention to withdraw a deposit," "Payments will be made only on checks;" soliciting deposits of cash, currency, and commercial paper from the public; accepting deposits of cash, currency, and commercial paper, and issuing and delivering regular bank pass-books to the public, said pass-books containing the printed words, "Bank," "Bankers," "Pass-books," "Deposits," "Interest," "Withdrawals," "Balance."  Because of these facts, "said Bankers Savings and Loan Company did then and there enter into and undertake to conduct and did conduct a banking business, thereby subjecting themselves to and coming under the jurisdiction and supervision of said R. E. Gormley as State superintendent of banks;" and because of these facts, petitioner was led to believe that said bank was a legitimate banking institution governed and controlled by the laws of the State, and she did deposit in said bank, on January 28, 1933, $863.12, which sum was appropriated by the

bank to its own use and to that of its officers; and petitioner will never be able to recover any of said sum, for the reason that "said bank was totally insolvent at the time said deposit was made, and the officers of said bank are now serving terms in the State penitentiary." At the time the petitioner deposited this amount in the Bankers Savings and Loan Company, it had been in operation for a period of approximately thirteen months, and during this time "R. E. Gormley as State superintendent of banks had full knowledge of the existence of and operation of said bank." "It was the duty of said Gormley as State superintendent of banks, under the law, to supervise and examine the said Bankers Savings and Loan Company." Since said bank closed, petitioner has ascertained that said bank "became insolvent in less than two months after it opened, and remained insolvent thereafter;" that said bank was hopelessly insolvent on the date she made her deposit; "that if the said State superintendent of banks had performed the duties imposed upon him by the laws of Georgia, he would have closed the said bank at any time after it opened, thereby preventing petitioner from depositing her money innocently in said bank;" that "if the said State superintendent of banks had not wilfully neglected to perform his legal duty, he would have found by an examination of the affairs of said bank, at any time after the said bank had been in operation for a period of two months, that the said bank was totally insolvent, and was being operated for the sole and exclusive purpose of cheating, swindling, and defrauding its depositors."

It is further alleged, that the failure of the superintendent of banks to perform his legal duties and his failure to examine said bank was wilful and wanton, and was the direct cause of the loss of petitioner; that because of the manner of operation of said company, such as its signs, etc., already set out, said Bankers Savings and Loan Company, under the banking law (Ga. L. 1919, pp. 135 et seq., art. 1, sec. 4, art. 7, sec. 1), was a bank as there contemplated, which law "required the said Gormley as State superintendent of banks to examine and supervise," and had he complied with the above section "he would have examined, supervised, and taken possession of said bank prior to the date of petitioner's said deposit, and thereby prevented the loss petitioner sustained;" that because of the manner of the operation of said company, as

already set out, "said Bankers Savings and Loan Company thereby conducted a banking business contrary to law and without the written permit of the superintendent of banks, and brought itself under the supervision of said Gormley as State superintendent of banks as prescribed by the banking act of 1919 (supra), art. 1, sec. 4, and art. 8, sec. 8; "and said Gormley as State superintendent of banks failed, neglected, and refused to examine and take possession of said bank as required by" art. 7, sec. 1, of said act; that the operation of said bank as set out was "well known to the said R. E. Gormley;" that he had been notified of the same by many parties, and especially by the Better Business Division of the Atlanta Chamber of Commerce, "and had been requested to examine the said Bankers Savings and Loan Company and take possession of its assets; that in August of 1932, the Better Business Division of the Atlanta Chamber of Commerce brought a mandamus against the said R. E. Gormley as State superintendent of banks, the case being reported in 177 *Ga.* 334; that after receiving the knowledge of the conduct of the said Bankers Savings and Loan Company, and being requested by the business men of the Atlanta Chamber of Commerce, and after having a mandamus suit brought against him, the said Gormley wilfully, intentionally, and deliberately failed and refused to examine the affairs of the said Bankers Savings and Loan Company, and failed and refused to take possession of the assets of said bank; that if the said Gormley as State superintendent of banks had examined the said Bankers Savings and Loan Company and taken possession of its assets after receiving notice of said mandamus proceedings, petitioner would not have made her said deposits and would not have sustained a loss as herein set out;" that under art. 3, sec. 1, of the banking act of 1919, said Gormley is charged with making semiannual investigations of every bank "subject to his supervision," that the Bankers Savings and Loan Company operated for a period of sixteen months, and Gormley failed and refused to make any investigation of said company; that under art. 7, sec. 1, of the banking act of 1919, "said Gormley as State superintendent of banks is charged with the duty of taking possession of any bank operating in the State of Georgia whenever any bank has violated any law of this State;" and that because of all of said acts of omission said Gormley has been guilty of a breach of his bond.

The plaintiff prays judgment against him and his bondsman, for the amount of her deposit.

To this petition the defendants filed a general demurrer, which the court overruled. This writ of error is prosecuted to test the correctness of that ruling. The allegations of the petition charge that Gormley as superintendent of banks failed to examine into the affairs of the Bankers Savings and Loan Company, as required by law; that if he had examined it he would have discovered that it was totally insolvent and was being operated solely for the purpose of cheating and defrauding its depositors, and would have taken charge of it; that he failed and refused to take possession of it after notice of its manner of operation and after requests that he take possession of its assets, and that had he performed his duties and examined into and taken possession of its affairs, the plaintiff would not have had the opportunity of depositing her money therein. Therefore we are here concerned with the failure of the superintendent of banks to perform certain duties alleged to have been imposed upon him by the laws of the State governing the conduct of his office, by reason of which failure plaintiff claims injury and damage. Gormley as superintendent of banks is a public official (Code, § 13-301 et seq.), and in pursuance of § 13-306 he gave the required bond, with the United States Fidelity and Guaranty Company as surety, conditioned that he would "faithfully discharge, execute, and perform all and singular the duties required of him, and which may be required by the constitution and laws" (§ 13-306). It is declared that the superintendent of banks shall be liable on his official bond "to any person, firm, or corporation injured on account of the failure of the superintendent . . to faithfully discharge the duties of his office. Suit may be brought thereon in any court of competent jurisdiction, in the name of the State for the use of the injured party." § 13-321. There can be no doubt that plaintiff has the right to sue on the bond given, and that her suit is properly brought.

As a general rule "the failure of a public officer to comply with the laws governing and regulating his powers and duties . . usually subjects such officer to a civil action for damages." 22 R. C. L. 478. It is a well-established principle that a public official who fails to perform purely ministerial duties required by law

is subject to an action for damages by one who is injured by his omission. However, it is equally well established that "where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption." 22 R. C. L. 486, § 164. Our Supreme Court has said: "The law is well settled that where public officials 'are acting within the scope of their duties and exercising a discretionary power, the courts are not warranted in interfering, unless fraud or corruption is shown, or the power or discretion is being manifestly abused to the oppression of the citizen.' *City of Atlanta* v. *Holliday,* 96 *Ga.* 546 [23 S. E. 509]." *Hudspeth* v. *Hall,* 113 *Ga.* 4, 7 (38 S. E. 358, 84 Am. St. R. 201), and cit.; *Pruden* v. *Love,* 67 *Ga.* 190; *Paulding County* v. *Scoggins,* 97 *Ga.* 253 (23 S. E. 845); *Varner* v. *Thompson, 3 Ga. App.* 415 (60 S. E. 216). The Code, § 13-401, declares that the superintendent of banks "shall either personally or by one of the examiners visit and examine *every bank subject to his supervision,* at least twice in each year." (Italics ours.) That it is a ministerial duty to visit and examine *every bank subject to his supervision,* at least twice in each year, there can be no doubt. But in some instances it must necessarily have been left to the judgment of the superintendent of banks as to what banks *were subject to his supervision.* In the present case it is apparent that the superintendent adjudged the Bankers Savings and Loan Company a bank not subject to his visitorial powers. "The term 'bank' as used in this title means any monied corporation authorized by law to receive deposits of money and commercial paper, to make loans, to discount bills, notes, and other commercial paper, to buy and sell bills of exchange, and to issue bills, notes, acceptances, or other evidences of debt, and shall include incorporated banks, savings banks, banking companies, trust companies, and other corporations doing a banking business, but, unless the context otherwise indicates, shall not include private bankers, partnerships, or voluntary associations doing a banking business, . . or building and loan associations or similar associations or corporations."

Code, § 13-201. The Bankers Savings and Loan Company was not chartered as a bank authorized to do the things enumerated in the section just quoted. Its charter was granted by the superior court of Fulton County, and not on application to the office of the Secretary of State, as provided in the Code, § 13-901 et seq.

It will be noted that in defining what are "banks" within the meaning of the banking act the Code expressly excludes "building and loan associations or similar associations or corporations." It declares (§ 16-201) : "The name 'building and loan association,' as used in this chapter, shall include all corporations, societies, or organizations or associations doing a savings and loan or investment business on the building society plan, viz., loaning its funds to its members, whether issuing certificates of stock which mature at a time fixed in advance or not, except those which restrict their business to the county of their domicile and not more than two other adjacent counties." In *McIntosh* v. *Thomasville Real Estate & Improvement Co.,* 138 *Ga.* 128 (74 S. E. 1088, Ann. Cas. 1914C, 1302), the Supreme Court said: "In order for an incorporated company to come within the classification of like character to a building and loan association, so that it may conduct business on the plan of a building and loan association and escape the penalty of taking an excess of legal interest, its charter must indicate that its method of business with relation to mutual participation in profits and losses in loans made by it has some distinctive feature of the plan of a building and loan association." By an act approved August 16, 1913 (Ga. L. 1913, p. 54; Code of 1910, § 2878; Code of 1933, § 16-101), it was declared: "And the term 'other like associations' shall include a corporation organized to do a general savings and loan business, and among other things lending its funds to members of the industrial and working classes, or others, and secured in whole or in part by personal indorsements and its own fully-paid or installment stock, or its own fully-paid or installment certificates of indebtedness, or other personal property. . . Provided, however, and nevertheless, the associations referred to and as defined herein shall not be compelled to lend their funds exclusively in the manner hereinbefore specified, but shall in addition thereto also have authority to make loans to members of the industrial and working classes and to all other persons, due at fixed intervals not exceeding twelve months, and

secured in whole or in part by personal indorsements and by its own fully-paid stock, or stock payable on the installment plan, certificates of indebtedness fully paid or payable on the installment plan, or both indorsements and such securities, or other personal security and choses in action; and on such loans, so made and secured as aforesaid, it shall be lawful to deduct interest in advance, but not to exceed 8 per cent. discount, and the installment payments, if any, made on such hypothecated stock or certificates of indebtedness during the time the loan is of force may or may not bear interest, at the option of the association, and the taking of said installment payments on said hypothecated stock, certificates of indebtedness, choses in action, or other evidences of indebtedness shall not be deemed usurious."

The charter of the Bankers Savings and Loan Company states, in paragraph 4, that "The particular business of said corporation is to be of the nature of *general investment and loan business.*" Section 3 states the object and purpose of the corporation to be pecuniary gain to its stockholders, "and to promote and encourage savings, and to establish an institution where aid may be extended its stockholders and others by extending them financial assistance, and to do any and all things as are now or may be hereafter allowed a corporation of similar character under the laws of Georgia." It prays for the right "to lend to the stockholders of said corporation, or to others, the money accumulated by it from time to time, and to make such loans upon such securities, real or personal, and upon such terms, conditions, and under such contracts, rules and regulations as its constitution and by-laws, not inconsistent with law, may set out." The charter further authorizes the company to secure the repayment of loans by "pledge of personal property, or by mortgage, or deed of trust or other conveyance of real estate, or by the transfer of its stocks, or by such other manner as the law might permit." It also authorizes the company to fix, by its constitution and by-laws, interest, or charges, or other conditions under which it will dispose of its money to its stockholders, and the manner in which it may "award or lend its assets to any member or stockholder according to the value of his shares, upon such reasonable charges and conditions as may be fixed by said constitution and by-laws." It authorizes the corporation to "acquire and own its own stock or stocks of

other corporations," and confers the other general powers ordinarily given to a company of this character. It may be readily seen that under the powers conferred by its charter the Bankers Savings and Loan Company may well be classed as a *like association,* to a building and loan association, as defined in the Code, § 16-101, quoted above. Therefore whether the superintendent of banks had supervisory powers over such a corporation where it undertook to do a general banking business, and, if so, whether because of the facts alleged the Bankers Savings and Loan Company was doing a general banking business, and what acts amount to the carrying on of a general banking business were undoubtedly questions requiring the exercise of judgment on the part of the superintendent. They called for a construction of the provisions of law regulating his duties. It is true that in *Bankers Savings and Loan Co.* v. *Better Business Division,* 177 *Ga.* 334 (170 S. E. 291), the Supreme Court adjudged that he did have the right to supervise such bank; but that decision can have no effect upon his liability for failure to examine into the affairs of that corporation, for the immunity from civil liability given to public officers for a mistake in judgment "extends to errors in the determination both of law and of fact. . . As regards errors of law, he is equally protected when he adopts a ,mistakened construction of an act of Congress or a State statute, or when he misunderstands the common law." 22 R. C. L. 486. The Supreme Court of Idaho, in State *v.* American Surety Co., 26 Idaho, 652 (145 Pac. 1097, Ann. Cas. 1916E, 209), in discussing and adopting the general rule of immunity of public officers from civil liability for errors in judgment, said: "So from all the cases, including the cases where the breaches were acts of commission and acts of omission, the sound rule seems to be that some words beyond the mere allegations of negligence and failure to perform should be alleged, showing an intent to act wrongfully, wilfully, maliciously, unfaithfully, or in bad faith, or, in other words showing evil intent, and then allege such facts as did constitute such intent." No facts are set forth in the present petition showing malice, fraud, corruption, or bad faith; nor does the petition, construed most strongly against the pleader, attempt to allege that the defendants acts were such. For this reason we are of the opinion that the general demurrer should have been sustained and the action dismissed.

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. In passing on a general demurrer to a petition, the allegations of fact must be considered as true; and so considering the allegations of fact in this petition, I think that a cause of action was set out, and that the court properly overruled the general demurrer.