NESBIT *v.* GORMLEY, superintendent of banks, *et al.*

No. 12998. OCTOBER 17, 1939. REHEARING DENIED NOVEMBER 17, 1939.

*C. N. Davie* and *Alex McLennan*, for plaintiff.

*Ellis G. Arnall*, attorney-general, *Duke Davis*, *Herschel E. Smith*, assistant attorneys-general, *G. B. Walker*, and *H. E. Edwards*, for defendants.

GRICE, Justice. Mrs. R. C. Nesbit filed her petition against R. E. Gormley, superintendent of banks of the State of Georgia, in which she sought by mandamus to compel him to pay a balance, with interest, claimed to be due her by virtue of a deposit which she had in the Milton County Bank at the time it passed into the hands of the superintendent. Gormley filed a demurrer. W. D. Rucker filed a so-called intervention, which was allowed without objection, and he was made a party defendant. The plaintiff amended her petition, and Gormley renewed his demurrer. Rucker also demurred. The demurrers were sustained, which had the effect of dismissing the action, and the prayer for mandamus absolute was denied. To these rulings Mrs. Nesbit excepted.

A controlling question presented by the demurrer is whether or not the superintendent of banks can be made subject to the writ of mandamus in a proceeding of this character. If the plaintiff is entitled to relief, must she first sue the Milton County Bank, and obtain judgment against it, before proceeding against the superintendent of banks? The petition seeks a mandamus against the superintendent of banks requiring him to pay to the plaintiff

$761.54, representing the balance of principal due to her, as well as interest on the entire deposit of $2175.89 at 7 per cent. per annum from the date the assets of the bank were placed in his hands for liquidation. As the basis for the prayer she alleges that on December 12, 1932, the bank suspended business, and its assets were taken charge of by defendant; that at that time she had on deposit therein $2175.89; that several dividends have been paid to depositors, the defendant claiming that by paying them the principal he has paid them in full; that the plaintiff has received dividends amounting to only $1414.35; that the defendant claims to have paid all costs and expenses of liquidation heretofore incurred, and to have paid the principal amount of all claims of depositors and other creditors, but has refused to pay any interest thereon; that he has in his possession cash and other assets of the appraised value of more than $8500; that he refuses to pay interest; that the plaintiff has made demand on him for payment of $761.54, with interest on that sum, as well as for the payment of interest on her deposit, but he refuses to pay that amount or any part thereof. She amended her petition by alleging as follows: "That the deposit referred to was a general demand deposit; and that plaintiff duly filed her claim for said deposit, as provided by law, and within the time prescribed by law for said deposit. The exact date of the filing of said claim and its approval plaintiff does not now recollect, but the original of said claim is in the possession of defendant." She further amended by giving the date of the dividends received and collected by her, the first date being December 18, 1933, and the sixth and last one February 27, 1936, the whole totaling $1414.35. With reference to the cash and other assets of an appraised value of more than $8500, she alleged, "all of which is available for the payment of plaintiff's claim," and averred that her demand of the defendant was made in person by her attorney on or about May 13, 1939. The petition was filed on May 19, 1939.

It is insisted by counsel for the plaintiff that her petition contains an averment that after she duly filed her claim the superintendent of banks approved it; that, as evidence of such fact, dividends were paid to her; that her claim having been proved and allowed, it stands on the same footing as a judgment, liquidated and no longer open to dispute; and therefore that man-

damus against the official charged with its liquidation is the available remedy. There is no direct statement in the petition as amended that her claim was approved by the superintendent of banks. "Pleadings are taken most strongly against the pleader, and the presumption is that he has alleged in the declaration all facts consistent with the truth which would impose a liability upon the defendant." *Fidelity & Casualty Co.* v. *VanDyke,* 99 *Ga.* 542, 544 (27 S. E. 709). It is alleged that she duly filed her claim as provided by law, but the only reference to any approval is in the sentence, "The exact date of the filing of said claim and its approval plaintiff does not now recollect, but the original of said claim is in the possession of the defendant." In reply to the insistence that the payment of dividends to her was an approval of her claim by the superintendent, it is to be observed that it is alleged that, while he made certain payments to her, he refused to pay the balance of principal claimed by her, and the interest, which are the only two items which form the basis of the relief sought by her. Even if, as contended, the facts set forth justify the conclusion that the superintendent of banks once approved her claim, "the filing and allowance of a claim against a defunct bank amounts to a mere prima facie determination of the right of the claimant to participate in the distribution of the assets of the bank in accordance with the priorities fixed by law." *Council* v. *Freeman,* 42 *Ga. App.* 632 (157 S. E. 263). And assuming further that what earlier transpired amounted to an allowance and approval by the superintendent of her claim, the very filing of this petition shows that he later withdrew his approval and allowance as to the sums which form the foundation of her present complaint. Her demand on him for payment and his refusal can mean nothing else. We know of no sound reason why a claim once approved by the superintendent may not later be rejected by him. When rejected, the Code, § 13-817, expressly provides that any action to establish the validity of such claim must be brought against the bank, not against the superintendent of banks. The alleged refusal to pay was a rejection of the balance of her claim. Personal notice thereof was given to her attorney who made the demand on the superintendent for payment. Thus the way was open to her to contest her right in a suit against the bank, but not in an action against the superintendent. *Berrien County Bank* v. *Alexander,* 154 *Ga.* 775 (115 S. E. 648).

Having a specific legal remedy for the enforcement of the right claimed by her, mandamus will not lie. Code, § 64-101. Her counsel, however, contends that mandamus is the proper remedy, because of the language of the Code, § 13-1701, which in part declares that "In the event the superintendent of banks should refuse . . to do any act or thing authorized or required by this title to be done, the person or persons affected by such failure or refusal, or the bank so affected, may institute appropriate proceedings in the nature of a mandamus against the superintendent," etc. In *Bankers Savings & Loan Co.* v. *Better Business Division,* 177 *Ga.* 334, 340 (170 S. E. 291), it was said that the Code section just referred to "does not limit the provisions of section 5440 [now § 64-101] of the Code." It is true that the precise point there under discussion was whether, since the Code, § 13-1701, restricted the right to maintain an action of mandamus against the superintendent of banks to those affected by his refusal to perform the acts which it was sought to compel, the complainant in that case had the right to institute the action; but we think the broad statement that § 13-1701 does not limit the provisions of § 64-101, is sound and applicable here. It was never intended by anything contained in § 13-1701 to repeal anything in § 64-101, and hence to permit mandamus to be brought against the superintendent of banks, although there is another specific legal remedy for the right asserted. It was never contemplated by the banking act that when the superintendent of banks is liquidating an insolvent bank, and refuses to pay a claim of a depositor or other creditor, even though he has once approved it, he is subject to mandamus before its validity has been established in a suit against the bank. His act in finally refusing to pay, and so personally notifying the creditor, must be construed as a rejection thereof by him within the meaning of the Code, § 13-817. Under that section, the suit must be brought against the bank and not against the superintendent of banks.

Nothing was decided in *Justices of the Inferior Court of Houston County* v. *Felder,* 23 *Ga.* 212, which militates against the views above expressed. That was a suit by a physician on a quantum meruit, for services rendered. The defendant demurred on the ground, first, that the demand was uncertain; and second, that what was the value of the services had been decided by the justices sit-

ting as a court; and that for these reasons mandamus would not lie. The language of the opinion must be taken in connection with the issues before the court. There was not involved in that case, as in this, the necessity of the plaintiff averring facts sufficient to show that she was entitled to payment out of a certain fund in the hands of the defendant.

The petition for mandamus was properly dismissed on demurrer.

*Judgment affirmed. All the Justices concur, except Reid, C. J., and Atkinson, P. J., who dissent.*

REID, Chief Justice. I can not agree to the judgment which holds that the plaintiff must test the validity of her claim in a suit by her against the bank. As I construe the petition, the claim is to be treated as having been approved by the superintendent of banks, and as showing that after paying a substantial portion of the claim by way of dividends which, in each instance, represented a percentage of the entire claim, the superintendent then refused payment of further dividends. This does not amount to such a rejection of "plaintiff's claim" as is contemplated by the Code, § 13-817. We are not dealing with a case where the superintendent of banks has withdrawn his approval of the plaintiff's entire claim, which had already once been allowed, but with his refusal to pay a claim already recognized by him. Under the statutory scheme of liquidation for banks in the hands of the superintendent, it is intended that the depositor litigate with the bank, and not the superintendent, over any controversy respecting the status of his claim at the time the bank closed and went into the hands of the superintendent; but as to matters arising after the superintendent of banks takes charge of the bank's assets, it seems to me the superintendent should, in a proper case, be subject to mandamus, and such a case, according to the plaintiff's petition, I take this to be. Presiding Justice Atkinson concurs in this dissent.