[No. 3875.  Decided March 30, 1901.]

THE STATE OF WASHINGTON *on the Relation of W. B. Stratton, Attorney General, Appellant,* v. JOHN R. ROGERS *et al., as the State Capitol Commission, Respondents.*

STATUTES — APPROPRIATION BILLS — TIME OF TAKING EFFECT.

The act of March 2, 1901 (Laws 1901, p. 54), entitled "an act providing for the purchase and completing and furnishing of a state capitol building, and providing for the payment of interest and making an appropriation," took effect immediately upon its passage and approval, since it must be construed as an appropriation bill, falling within the exception contained in art. 2, §31, of the state constitution, which declares that "no law, except appropriation bills, shall take effect until ninety days after the adjournment of the session," unless otherwise directed by the legislature in case of an emergency.

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge.  Affirmed.

27-24 WASH.

*W. B. Stratton, pro se.*

*Frank C. Owings,* for respondents.

PER CURIAM.—The attorney general made application to the superior court of Thurston county for a writ of prohibition against the state capitol commission prohibiting the commission from proceeding under the act entitled, "An act providing for the purchase and completing and furnishing of a state capitol building, and providing for the payment of interest and making an appropriation." (Laws 1901, p. 54). The affidavit for the writ alleges that the commission have met and organized without authority of law, and have sold the warrants in the sum of $350,000 drawn on the state capitol building fund, pursuant to the appropriation made by law, upon the capitol building fund, and that the above act of March 2, 1901, contains no emergency clause, and therefore does not take effect until ninety days after the adjournment of the legislature. A demurrer was interposed to the affidavit upon the ground that it did not state facts sufficient to entitle the relator to any relief, which was sustained by the superior court, and judgment entered denying the writ. Relator appeals.

The only question presented by the record is the time that the act of March 2, 1901, takes effect. While not in terms, in essence the act is amendatory of the act approved March 21, 1893, entitled "An act to provide for the location and erection of a capitol building and providing an appropriation therefor, and declaring an emergency." Laws 1893, p. 462. Section 1 of the latter act creates the state capitol commission, and thereafter succeeding sections define its powers and duties. Section 5 and succeeding sections direct the location and construction of a capitol building in Olympia. Section 15 creates

the fund known as the "capitol building fund," into which
fund shall be paid the proceeds of all moneys derived from
the sale of lands granted to the state of Washington for the
purpose of erecting public buildings at the state capital,
and appropriates directly for the two succeeding years
$500,000.   The act of March 2, 1901, directs the capitol
commission to proceed to the erection of the capitol build-
ing, and authorizes them to purchase from Thurston county
the county court house and make additions thereto, and the
grounds, providing limitation upon the price, and declares
that the same shall be used as the capitol building of the
state of Washington.   Section 6 provides that in order to
facilitate the sale of warrants and prevent sacrifice of the
state lands donated by the general government for the
purpose of erecting a capitol building, the state guar-
antees the interest on the warrants issued for the pur-
chase, completing, and furnishing of the building at a rate
not to exceed five per cent. per annum; and $17,500 is
appropriated out of the general fund for the purpose of
paying the interest upon the warrants, such interest so
paid to be returned after the payment of the principal sum
of $350,000 out of the capitol building fund, arising from
the proceeds of the sale of granted lands.   Section 8 di-
rectly appropriates out of the state capitol building fund
for the purchase, completion, and furnishing of the cap-
itol building the sum of $350,000, and all the unexpended
portion of the capitol building fund under the act of 1893
is repealed, and the latter appropriation is declared to
stand in lieu of the unexpended appropriation made in the
act of 1893.

The controversy requires construction of § 31, art. 2,
of the constitution, which declares: "No law, except ap-
propriation bills, shall take effect until ninety days after
the adjournment of the session  .   .   .   unless in case

of an emergency . . . the legislature shall other-
wise direct." In the arguments presented by counsel it
is conceded that little judicial construction exists which is
authority upon the point involved here. It seems a num-
ber of states have constitutions similar to the provision in
ours; that is, specifying the time within which all acts
of the legislature go into effect. In only a few of the
states having such a prescription of time are there excep-
tions where any law has immediate effect from its ap-
proval, but some four of the state constitutions have been
called to our attention which contain exceptions. That
of Louisiana (art. 40) declares: "No law passed by the
general assembly, except the general appropriation act, or
act appropriating money for the expenses of the general
assembly, shall take effect until promulgated." Missouri
(§ 36, art. 4): "No law passed by the general assembly,
except the general appropriation act, shall take effect."
Kentucky (§ 55): "No act, except general appropriation
bills." Texas (§ 39, art. 3): "No law passed by the legis-
lature, except the general appropriation act." These con-
stitutions are older than ours, and it is therefore fair to
assume that in framing the constitution of Washington the
limitation, "*general* appropriation bills," was intention-
ally omitted. At any rate the court would not be author-
ized to insert the word "general" in the constitution. The
words must be accepted in their ordinary and common
meaning here. It has been urged by relator that, if an
unrestricted meaning be given to the word "appropria-
tion," all bills providing for the appropriation of money,
however incidental, are appropriation bills. But this may
not necessarily be conceded. It is true that all general
appropriation bills provide money for certain purposes,
ordinarily for the expenses of the government and public
institutions, and incidentally may provide for the appli-

cation of the appropriation and specify the purchase of materials required in running the same, and how it shall be done; yet such incidental specifications do not deprive the appropriation bill of its nature as general. In the act under consideration the existing capitol commission, with matured · powers to fully proceed to the erection of the capitol, has some different and additional duties imposed upon it. The original appropriation made for the capitol building fund created in 1893 upon the faith of the land granted to the state for the erection of public buildings is reduced from the unexpended portion of $930,000 to the sum of $350,000, and the interest on this sum is guaranteed until the payment of the principal out of the capitol building fund when the interest so expended from the general fund shall be returned to the state. We think a fair construction of the act shows it to be substantially an appropriation bill, and that it comes within the exception mentioned in art. 2, *supra,* of the constitution.

The judgment of the superior court is affirmed.