TALMADGE, commissioner, *v.* CORDELL.

No. 7096. FEBRUARY 12, 1930. REHEARING DENIED FEBRUARY 22, 1930.

*George M. Napier, attorney-general, T. R. Gress, assistant at-torney-general, L. P. Goodrich, S. P. New, J. K. Whaley, R. W. Cooper,* and *L. C. Harrell,* for plaintiff in error.

*W. S. Mann,* contra.

HINES, J. This is the second appearance of this case in this court. See *Talmadge* v. *Cordell,* 167 *Ga.* 594 (146 S. E. 467), where the facts then appearing are sufficiently set out in the report. In an amendment to his petition, filed on July 20, 1928, Cordell alleged, in the 4th paragraph, that defendant as Commissioner of Agriculture had given certificates to six individuals, the exact terms of which Cordell could not allege, for the reason that the certificates were not in his possession, but the substance of which was that said individuals were authorized to inspect fertilizers until further notice from the commissioner; that none of these six individuals was named as State Inspector of fertilizer to the office filled and occupied by him, and that none was commissioned by the defendant or the Governor of this State. In the 5th paragraph petitioner alleged that the defendant was familiar with the decisions of the court holding that an official, such as petitioner, could not be removed from office without a hearing and notice of the charges, and was fully aware of the fact that the legislature had declined to give defendant the arbitrary power sought to be exercised by him. At his instance and during the session of the General Assembly of 1927, there were introduced certain bills for the purpose of giving to the Commissioner of Agriculture the power and authority to revoke the commissions issued by his predecessor in office, and to give him the power to remove any appointee of his predecessor, or of himself, without cause. The commissioner appeared before the committee of the General Assembly and urged the passage of said bills, and knew that they were defeated. In the 7th paragraph it was alleged that petitioner, soon after defendant stated that he would discontinue paying to petitioner the salary of said office, employed counsel to bring the necessary suit to compel defendant to recognize petitioner and pay him the salary due him as in-

spector, but said attorney, before he had time to look into the matter and file the suit, became seriously ill and remained so until a week or ten days prior to the filing of this suit; that petitioner would have employed other counsel and proceeded with the suit but for the fact that his attorney assured him that the acts of the defendant were wholly illegal and void, and that the Governor would not approve warrants for the payment of the salary incident to said office to any one else, and that he would take the matter up with the Governor for this purpose; and petitioner is advised and believes that his attorney did take the matter up with the Governor, and had assurance that no salary incident to said office would be paid to any one else. At the time of the filing of the suit the season for inspecting fertilizers had just opened, and petitioner, before suing, again demanded that the defendant supply him with the necessary containers for performing the duties of his office. In the 8th paragraph petitioner alleged that he still occupied the office of inspector of fertilizer under his appointment and commission. He admitted that he had not been able to discharge the duties of said office, because the defendant had failed to furnish him the necessary containers for taking and reporting samples; but he averred that there was and had been no vacancy in the office occupied by him, and that the acts of the defendant of which he complains were unreasonable and arbitrary; that if the defendant claims to have paid to any other person the salary incident to the office occupied by him, such acts and conduct were in bad faith, and if he attempted to appoint any one else to the office occupied by petitioner, this was likewise unlawful and in bad faith, defendant being fully informed of all the facts and circumstances of the case.

When the case was first tried there was no answer by the defendant to this amendment of the petition. In an answer, sworn to by the defendant and filed on February 16, 1929, the defendant denied the allegations of the 4th, 5th, 7th, and 8th paragraphs stated above, and made the following allegations: Another person had been specifically appointed to this office in place of petitioner, which appointment was made immediately after defendant assumed the office of Commissioner of Agriculture. The law provides for six long-term fertilizer inspectors, and six were specifically appointed by him immediately after he assumed office, which constituted a full complement of officers. Ever since the salaries have

been paid by him in good faith to these appointees. Plaintiff is barred by laches, he having slept over his rights without any excuse, and has been guilty of gross laches and unreasonable delay. The writ of mandamus should not be made absolute, for the reason that, under the Neill act of 1927, all funds that this defendant had on hand as Commissioner of Agriculture on January, 1, 1928, reverted to the treasury and became a part of the general fund of the State, and under said act and other law it is legally impossible for defendant to make payment to petitioner for any salary for any years previous to 1929. It would be a misdemeanor on his part to do so. He is not allowed by law to pay the appropriations for the year 1929 for any back salaries, or any other back expenses; the only way such payments could be made would be for the legislature to pass a deficiency appropriation bill. The writ of mandamus never issues where it would be ineffectual to accomplish its purpose, and defendant has no funds from which he could pay the salaries sued for. The right of the plaintiff to occupy the office is a moot question, the term having expired; and his right to recover any salary is likewise a moot question.

After trial, and while the court had the case under consideration, the defendant tendered another amendment making these allegations: Immediately after he first assumed the duties of the office of Commissioner of Agriculture on July 1, 1927, he appointed six long-term fertilizer inspectors, the full number provided by law. The appointees accepted the appointments, took the oath of office provided by law, and assumed the duties and performed the functions thereof. Ever since that date the Department of Agriculture has maintained six long-term fertilizer inspectors, who have performed the duties of their office and received the pay. They were appointed and acted and were taking the place formerly occupied by plaintiff. In January, 1928, he appointed forty short-term fertilizer inspectors as provided by law. They accepted the appointment, took the oath of office, assumed its duties, have performed the functions thereof, and have been paid therefor as provided by law. As Commissioner of Agriculture he has maintained the full quota of fertilizer inspectors at all times since he became such commissioner, and they took the places of the plaintiffs in the suits filed against him.

The defendant introduced in evidence a certificate from the

State Treasurer, to the effect that the Commissioner of Agriculture had on hand on December 31, 1927, on account of fees from fertilizers, $133,654.73; that said officer had on hand on December 31, 1928, $162,791.28, which sums reverted into the general fund of the State at the close of business on the above dates; and that on January 1, 1928, and on January 1, 1929, no funds were in the State Treasury to the credit of the fertilizer inspection fees. Also, the affidavit of S. J. Slate, State Auditor, that on January 1, 1928, and January 1, 1929, there were no funds in the State Treasury to the credit of the fertilizer inspection fees. Also, the affidavit of Leman Anderson, that he held the office of chief clerk in the Department of Agriculture; that he had examined the books and records of that department; that on July 1, 1927, Eugene Talmadge, as Commissioner of Agriculture, appointed six long-term fertilizer inspectors for the State, their names and residences being set out; that these six men took the oath of office, and ever since said date had been paid therefor at the rate of $100 per month, and actual traveling expenses while in the performance of their duties; that one of the inspectors, W. B. Brant, was laid off after 30 days notice on December 1, 1927, and E. H. Dorsey of Athens was appointed in his place on that date, and no other change had been made in the personnel of said inspectors.

Plaintiff introduced a certified copy of a motion for rehearing by the defendant in this case, when it was previously before this court, wherein the defendant contended that the Neill act made it impossible for him to issue a warrant on the treasurer for the payment of the salaries claimed by petitioner, for the reason that this law required that all the money he had to his credit, arising from the fertilizer inspection laws on January 1, 1928, be deposited in the State Treasury, and it became a part of the State's general fund, and for this reason it was illegal for him to draw his warrant on the treasurer thereafter on said fund.

The trial judge granted a mandamus absolute, requiring the defendant as Commissioner of Agriculture to draw his warrant on the State Treasurer, as provided by law, against funds collected from the inspection of fertilizer in favor of the plaintiff for the salary due him from July, 1927, to September, 1928, inclusive, aggregating $1,500. To this judgment the defendant excepted upon the ground that it was contrary to the law, for the reasons: (a) that an issue

18

of fact was involved in the case, which should have been submitted to a jury before judgment; (b) that an issue of fact was involved, as to whether or not other parties had been specifically appointed to the office claimed by the plaintiff, as to whether or not there was a full complement of officers appointed by the defendant, and as to whether or not the defendant in good faith paid the salaries to the de facto officers; (c) that the mandamus absolute required the defendant to issue his warrant on the State Treasurer for $1,500, when the act of the legislature approved August 18, 1927 (Ga. Laws 1927, p. 311), made it impossible for him to issue a warrant on the treasurer for the payment of the salary claimed by petitioner, this law requiring all money that he had to his credit arising from fertilizer inspection fees on January 1, 1928, to be deposited in the State treasury as part of the State's general fund; (d) that under the undisputed evidence there were no funds in the State treasury against which the defendant could draw his warrants, and no funds which the State Treasurer could pay out on warrants thus drawn by him; (e) that such warrants would be null and void, and it would be illegal for the State Treasurer to honor them, and compliance by defendant with the order of the judge would be illegal; and (f) that the pleadings and the evidence raised issues of fact which should be submitted to a jury, and demanded a finding by the jury in favor of the defendant.

■ We think the exceptions on the ground that there were issues of fact which should have been submitted to the jury are without merit. If an issue of fact is involved it may be heard by the judge in vacation upon the consent of all parties. Civil Code (1910), § 5446. It does not expressly appear that the case was submitted for decision to the judge without the intervention of a jury; but this was done by clear implication. The bill of exceptions recites that the case came on for trial before the trial judge on a stated date. After argument the court took the case under advisement. Subsequently both parties introduced evidence before the judge without objection that there were issues of fact involved which should be submitted to the determination of a jury. In these circumstances the parties by clear implication submitted to the trial judge the decision of any issues of fact involved. The excepting party, after having introduced evidence, without objection, upon the issues of fact involved in the case, is not in a position to make

this objection to the judgment of the court. By introducing evidence, and without objecting that the case was one for trial before a jury, he will be presumed to have consented to the trial of any issues of fact by the judge. *City of Camilla* v. *Norris,* 134 *Ga.* 351 (67 S. E. 940).

■ As to exception (b), a judgment is never contrary to law merely because issues of fact were involved in the case. Such an exception is not tantamount to an exception that the judgment is contrary to law because it is not founded upon evidence.

■ It is next insisted that the act of August 18, 1927, made it impossible for the defendant to issue a warrant on the treasurer for the payment of the salary claimed by petitioner, for the reason that this law required all money that was to his credit in the treasury arising from fertilizer inspection fees on January 1, 1928, to be deposited in the State Treasury as part of the State's general fund. The first section of this act declares that "It shall be the duty of every department, commission, bureau, and other branch or agency of the government of this State, and of every official head of every department, commission, bureau and other branch or agency of the government of this State, created by special act, the support and maintenance of which has been provided by special act and not by direct appropriations of the General Assembly, to collect and forthwith to pay into the State treasury all moneys, fees, commissions, penalties, or other charges which they are authorized by law to collect for the support and maintenance of such department, commission, bureau, or other branch or agency of the State Government." The second section declares that "The costs and expenses of the maintenance and support of every department, commission, bureau, and other branch or agency of the State government shall be paid out of funds in the State treasury by warrant of the Governor drawn on appropriations duly made by the General Assembly." By the seventh section it is provided: "Should the official head of any department, commission, bureau, or other branch or agency of the State government violate any of the provisions hereof, he or she shall, upon conviction, be deemed guilty of a misdemeanor and punished as provided therefor, and in addition thereto shall be thereafter ineligible to hold such office." The eighth section declares that "The provisions of this act shall become and be effective on and after the first day of January, 1928."

Ga. Law 1927, p. 311. The salary claimed by the plaintiff as an inspector of fertilizer was for the period from July, 1927, to September, 1928, inclusive. On and after January 1, 1928, the Commissioner of Agriculture has been without authority to pay the costs and expenses of the maintenance and support of the Department of Agriculture by warrants drawn by him on the State treasury, as was the practice prior to that date. Up to that time it was his duty to draw warrants on the treasury against funds received from the inspection of fertilizers, for the payment of salaries of fertilizer inspectors, and mandamus would lie to compel him to discharge this official duty. Ga. Laws 1912, p. 56; Civil Code (1910), §§ 1795, 5440; *Talmadge* v. *Cordell,* supra. It is clear that since January 1, 1928, the duty to issue such warrants is not longer imposed upon that officer, and the authority to draw such warrants has been taken away by the act of 1927, as to salaries due fertilizer inspectors since that date. Have the duty and authority to draw these warrants for salaries of these inspectors which became due prior to January 1, 1928, been superseded by the act of 1927? This act does not expressly provide that warrants for salaries due to these officers or employees prior to January 1, 1928, shall be paid on warrants drawn by the Governor on appropriations made for that purpose by the legislature. It was the duty of the Commissioner of Agriculture to draw warrants in favor of the plaintiff for his salary as it became due monthly until January 1, 1928. If he had complied with this duty and his warrants had been paid, no one would question his authority to do so. It is a general rule that statutes prescribe only for the future, and generally do not have a retrospective operation. They shall be so construed as to give them a prospective operation only, and they shall be permitted to operate retrospectively only where the intention to have them so operate is clear and undoubted. Civil Code (1910), § 6; *Bond* v. *Munro,* 28 *Ga.* 597; *White* v. *Ross,* 40 *Ga.* 339, 341; *Kingsbery* v. *Ryan,* 92 *Ga.* 108 (4) (17 S. E. 689).

So we are of the opinion that the act of 1927 took from the Commissioner of Agriculture the power to draw warrants upon the State treasury in payment of salaries due to fertilizer inspectors after January 1, 1928; but that it did not after that date relieve this officer from the duty and deprive him of the power to issue warrants for salaries due these officers or employees which had ac-

crued prior to the time this act became operative. The insistence that when the case was previously here this court held that mandamus would lie to compel this officer to issue his warrants upon the State treasury for salaries due these officers or employees which accrued both before and after January 1, 1928, is not well taken. It is true that after our decision was rendered the commissioner made a motion for rehearing upon the ground that his power to issue warrants for the salary claimed by the plaintiff had been taken away from him by the act of 1927, and that the motion was denied by this court. The denial of that motion would not have the effect as now contended. It was turned down upon the ground that the point had not been raised and passed upon by the trial judge. The general rule is that this court will not entertain a motion for rehearing which raises a question of law which had not been broached in or decided by the court below. It was on this ground that we refused to entertain this motion for rehearing.

■ It is insisted that under the undisputed evidence no funds were in the State treasury against which defendant could draw his warrants for plaintiff's salary at the time this proceeding was instituted, that there were then no funds with which the treasurer could pay warrants thus drawn, and that for this reason the grant of the mandamus would be nugatory. If the commissioner had discharged his duty and drawn these warrants at the times the monthly salary of plaintiff became due, there were funds in the treasury appropriated by the legislature for and subject to the payment of these warrants. The fact that the funds afterwards, owing to the failure of the commissioner to discharge this duty. and issue these warrants, had reverted and become a part of the general funds of the State, and that there are no funds now in the treasury subject to their payment when drawn, would not make such warrants null and void. The purpose of requiring such warrants to be drawn is twofold. In the first place, it prima facie liquidates the claim. In the second place, it is the authority to the treasurer to pay the same if in funds, or when funds for that purpose come into his hands. *Maddox* v. *Anchor Duck Mills*, 167 *Ga.* 695 (146 S. E. 551).

■ Applying the rulings stated above, we are of the opinion that the trial judge erred in making the mandamus absolute for so much of the salary due to the plaintiff as accrued after January 1,

1928; but that he properly made the mandamus absolute for the salary due the plaintiff prior to that date. So we affirm the judgment, with direction that it be so modified as to compel the Commissioner of Agriculture to issue to the plaintiff warrants for the installments of his monthly salary which became due prior to January 1, 1928, and that these warrants be issued as of the dates when they should have been issued under the law in force at the time the monthly installments became due. As to the salary found due to the plaintiff after January 1, 1928, the same will have to be paid under the terms embraced in the act of 1927. The defendant having obtained a material modification of the judgment, the costs of bringing this case to this court are awarded against the plaintiff.

*Judgment affirmed, with direction. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

ATKINSON, J., dissents from so much of the rulings in the third, fourth, and fifth headnotes and corresponding divisions of the opinion as holds that mandamus should issue for any part of the salary.