IRONS *v.* HARRISON, comptroller-general.

No. 11825. DECEMBER 1, 1937. REHEARING DENIED DECEMBER 14, 1937.

*E. W. Maynard,* for plaintiff.

*M. J. Yeomans, attorney-general,* and *Dave M. Parker, assistant attorney-general,* for defendant.

HUTCHESON, Justice. Lewis A. Irons brought a petition for mandamus against Homer Parker, comptroller-general of the State of Georgia. The petition was sanctioned and ordered filed on November 10, 1936. As amended it contained substantially the following allegations: On January 1, 1933, petitioner was legally appointed deputy insurance commissioner of the State of Georgia, in the comptroller-general's department, the comptroller-general at that time being William B. Harrison. Petitioner's salary was fixed by law at $3000 per annum. On April 1, 1933, the comptroller-general, Harrison, reduced petitioner's salary ten per cent.,

effective as of that date, and which reduction continued until July 31, 1935, at which time petitioner resigned his position as deputy insurance commissioner. He did not consent to the cut in his salary, and the cut was made over his protest. The comptroller-general had no right to reduce the salary, and petitioner is entitled to mandamus to compel the payment of $700 back salary as fixed by law, together with interest thereon at 7 per cent. per annum. The defendant has funds on hand which can legally be used to pay said back salary, and, after demand, he refuses and fails to pay the same. The plaintiff prays that mandamus nisi issue, requiring the defendant to show cause why a mandamus absolute should not be issued, requiring him to pay petitioner said $700 with interest thereon, "if he has funds which can be legally used for that purpose;" that if the defendant has no funds in his possession which can legally be used for that purpose, he be required to draw a warrant upon the treasurer, countersigned by himself, for the amount of said back salary with interest, or that he be required to request the Governor to issue a warrant for said amount; and be required to countersign the warrant as drawn by the Governor; that the defendant be required to do any and all other acts that may be necessary etc. Demurrer and answer to the petition were filed. On a hearing before the court without a jury, substantially the following evidence was introduced: The petitioner testified as to his appointment and as to the cutting of his salary; that he protested to the comptroller-general and the attorney-general of the State; and that his salary as reduced was carried in the budget over his protest. Homer Parker testified that he was not in office at the time of petitioner's employment; that the records of his office show that petitioner was carried on the budget at 90 per cent. of his salary as fixed by statute; that the comptroller-general's department in 1933 operated on 71 per cent. of the appropriation, in 1934 on 78½ per cent., in 1935 on 92½ per cent.; that in 1936, the legislature having failed to pass an appropriation bill for that year, the department was operated pursuant to certain proclamations of the Governor, continuing in effect the appropriation act of 1933. The defendant further testified: "I have enough money in the bank to my credit now [January 2, 1936] to run my department and pay this $700, and more than enough. I got plenty of money. There is no question about not having the money; the

only question is for what purpose the money can be used. I have paid the salaries of every employee of the department for the year 1936, and they are paid up to date. I have a deputy insurance commissioner now, and he is drawing $3000 per year. . . I go out of office on the 13th, to be succeeded by Mr. Harrison. I think I have about $25,000 that I am going to turn over to Mr. Harrison when I go out of office this month. . . This balance that I have in there I am going to use to operate my office until 40 per cent. of January has passed, and I am going out of office leaving no obligation for 1937 whatever." The balance above referred to was a balance from moneys paid to the comptroller-general's department pursuant to the Governor's proclamation which was introduced in evidence. The court denied a mandamus absolute and the petitioner excepted. By amendment William B. Harrison, successor to Homer Parker, was made a party defendant.

■ The first question presented for determination is whether the petitioner, as a matter of law, is entitled to the unpaid salary to which he lays claim. The insurance department of the State of Georgia is a department in the office of the comptroller-general, who as to that particular department is styled "insurance commissioner," and as such he may appoint a deputy insurance commissioner. Code, § 56-101. "The deputy insurance commissioner, who shall be a man of actuarial experience, shall be paid out of the State treasury, as is now provided by law for the payment of salaries of all State-house officers, a salary of $3000 per annum." § 56-102. (Ga. L. 1912, pp. 119, 128; 1919, p. 283; 1931, pp. 7, 31). The Code, § 89-701 (Ga. L. 1865-66, pp. 11, 12), declares: "The various sums of the annual salaries of all the officers of this State, whose salaries are fixed by law, are hereby appropriated annually to pay said officers until said salaries are changed by law." Construing these two sections together, it appears that the legislature appropriated annually $3000 to pay the salary of the deputy insurance commissioner. Such an appropriation constituted what is commonly termed a "continuing" or "permanent" appropriation. While ordinarily a continuing or permanent appropriation might have the effect of annually appropriating such sums to the purposes enumerated, there is a section of the Code, § 47-502 (Ga. L. 1889, p. 15), which to some extent militates against this effect. It declares: "All general appropriation bills, in addition to the cus-

tomary itemized statements of the amounts appropriated for the usual expenses of the executive, legislative, and judicial departments of the Government, and for the support of the public institutions and educational interests of the State, shall contain also a like itemized statement of all amounts appropriated by any previous law to be paid annually out of the treasury; and such amounts so appropriated by previous laws shall not be paid from the treasury, unless they are embraced in the general appropriation act." This section, being an act of the legislature and not a constitutional provision, "should be construed in connection with the other statutes relating to appropriations. As shown by its own terms, this section presupposes the existence of a general appropriation act; and its proper interpretation is that where such an act has been passed, continuing appropriations are suspended unless they are embraced therein; but if no general appropriation act has been adopted, then the continuing appropriation statutes may be followed, so far as applicable, in the disbursement of State funds. State v. Stuab, 61 Conn. 553 (23 Atl. 924); Jeffreys v. Huston, 23 Idaho, 372 (129 Pac. 1065); Falk v. Huston, 25 Idaho, 26 (135 Pac. 745); 59 C. J. 259." Nance v. Daniel, 183 Ga. 538, 542 (189 S. E. 21). The only effect of this section, when construed with the constitutional provision that no money shall be paid from the treasury except upon an appropriation made by law (Code, § 2-1811), is that no legislative continuing appropriation shall operate as an appropriation during those years which are covered by a general appropriation act, unless such appropriation is embraced therein; and when embraced therein, the amount so appropriated is to be determined by the previous statute, if not otherwise provided in the general appropriation act. The legislature enacted general appropriation bills for the years of the petitioner's employment; and it must be determined whether an appropriation for the salary of deputy insurance commissioner was embraced in such acts.

■ The general appropriation act of 1931 (Ga. L. 1931, pp. 50, 57), covering the years 1932 and 1933, contains an appropriation to the comptroller-general's department in the lump sum of $120,-000, and provides "that from the above amount appropriated shall be expended the necessary amounts to carry out the entire duties of the department," with certain exceptions not material to the

present case. The general appropriation act of 1933 (Ga. L. 1933, pp. 13, 15) contains an appropriation to the comptroller-general department in the lump sum of $110,000 for the years 1934 and 1935 respectively, with an identical proviso as contained in the act of 1931. The office of deputy insurance commissioner being an office in the comptroller-general's department, the duties of that office are among the duties of the comptroller-general's department, and the payment of the salary of the deputy insurance commissioner is an expenditure necessary for carrying on the duties of the comptroller-general's department. Construing the provisos of the appropriation act of 1931 and 1933 in the light of the Code, § 47-502, and the statutes fixing and appropriating a salary of $3000 per annum to the deputy insurance commissioner, we are of the opinion that the general appropriation acts of 1931 and 1933 "embraced" an appropriation of $3000 per year for the payment of the salary of the deputy insurance commissioner. That the amount thus appropriated was not itemized as required by the Code, § 47-502, does not affect the validity of the appropriation. While a "dedication" or "allocation," without more, may not amount to an appropriation, the language of a statute might, with or without either of these words, amount to an appropriation. No express form of words is necessary to constitute an appropriation. It is sufficient if an intention to make it is clearly manifested by the statute, under the settled rules of construction. 25 R. C. L. 396; 59 C. J. 244, § 388. Both § 47-502, supra, and the appropriation acts of 1931 and 1933 are acts of the legislature; and the general appropriation acts having sufficiently appropriated and embraced within the lump-sum appropriation the amount appropriated annually by previous laws for the payment of the salary of the deputy insurance commissioner, such appropriation will be given effect under § 47-502. The appropriation for such purpose being sufficiently expressed in the general appropriation acts, such acts will be given a controlling effect over the previous act of the legislature requiring an itemization of such appropriations, and such requirement for itemization will be considered as merely directory, and not mandatory. An examination of previous general appropriation acts discloses that the legislature has itself placed a similar construction on the language of the statute; such previous acts, in numerous instances, not containing an itemi-

zation of the amounts appropriated by previous laws.

■ Appropriations for the salary of the deputy insurance commissioner having been embraced in the general appropriation acts of 1931 and 1933, the previous continuing appropriation for the same salary was merged into and became a part of the general appropriations for the years covered by such acts, losing its identity as a continuing appropriation, and is subject to the qualifications, conditions, and provisos contained in such general appropriation acts relating to the appropriations therein made. The act of 1931 provided that the appropriations therein made were subject to the following conditions: "In the event the revenue for either of the years 1932 and 1933 shall not be sufficient to pay all said appropriations in full for said year, the appropriations herein made for such year which are fixed by previous laws shall be paid in full, and the remaining appropriations herein made for such year shall, in the event of such deficit of revenue for either of said years, be reduced, and the same are hereby reduced, in the ratio that the amount of any such appropriation bears to the amount of the deficit for either of such years. In the event the appropriation for any board, bureau, commission, department, or agency of the State shall be reduced, under this section, by reason of any deficiency in revenue for either of the years 1932 and 1933, the amount of the appropriation provided by this bill and remaining unpaid by reason of such reduction shall not constitute a claim against, or obligation of, the State of Georgia, but the status of any board, bureau, commission, department, or agency of the State to which any such appropriation is herein made shall be the same as if only such reduced amount had been appropriated in this bill." The act of 1933 contained the following provisions: "In the event that the revenue receipts of the State treasury available for paying the fixed sum appropriations herein made should be less than the total sum of such appropriations in either of the periods covered under this act, then the fixed amounts herein appropriated for that period shall be paid in full for the following purposes: For insurance on public property, for the interest on the fixed public debt, for the interest on current loans, and for the expenses of the judicial and legislative branches; and the fixed sums appropriated for all other purposes for that period shall be reduced pro rata in the amount of the deficiency of revenue receipts for the period.

The sum so stricken under provisions of this section are hereby declared annulled, and the sums remaining after the application of the provisions of this section shall be the appropriations for the purposes named in this act, in lieu of the amounts therein fixed and set out." So it will be seen that the appropriations affected by these provisos or conditions, are "reduced" or "annulled" to the extent that the revenue for the respective years was insufficient to pay the same. In the first of these acts was the term "revenue," and in the other "revenue receipts." Each of them was evidently employed in the sense of the applicable income received during the years in question, and not as the possible proceeds of such uncollected tax; the statutes here under consideration being different from those construed in People v. Miner, 46 Ill. 384; State v. Rogers, 24 Wash. 417, 420 (64 Pac. 515); State v. Brian, 84 Neb. 30, 32 (120 N. W. 916). The condition attached to the act of 1931 expressly exempts from such condition, and provides for payment in full of, the appropriations therein made as are fixed by previous laws. The salary of the deputy insurance commissioner was an appropriation fixed by previous law, and was therefore, under the act, to be paid in full for the year 1933. It follows that any cut or reduction made in the salary of such officer for the period embraced by the statute was unauthorized by law. The petitioner in the instant case, having been such officer for the year 1933, covered by the statute, was entitled to his salary in full for that year.

The general appropriation act of 1933 does not exempt from the operation of the reduction clause contained therein appropriations the amount of which is fixed by previous laws, and the appropriation for the salary of the deputy insurance commissioner, included in the fixed sum appropriated to the comptroller-general's department, was such an appropriation as was affected by the reduction clause of the act. The appropriation to such office was, under the terms of the act, "annulled" to the extent that the revenue for the respective years covered by the act was insufficient to pay the fixed sum appropriation in full. It follows that under the evidence adduced at the hearing, and the ruling above made, the petitioner, so far as the appropriation acts covering the period of his employment are concerned, was entitled to his full salary for the year 1933, and to such portion of his salary for the years 1934

and 1935 as was not annulled by reason of insufficiency of revenue for those years. The insufficiency of revenue for the year 1934 was 21-1/2 per cent. of the original appropriation. Therefore it is apparent that the petitioner would not be entitled to any further payments on his salary for that year. The insufficiency of revenue for the year 1935 was 7-1/2 per cent., and the petitioner was entitled to the payment of his salary as fixed by law, less such percentage, rather than the 10 per cent. reduction actually made.

■ The petitioner contends, that, regardless of the deficiencies in revenue for the years 1934 and 1935, he is entitled to his salary (as previously fixed by law) in full, by reason of certain proclamations of the Governor under dates of February 17, 1936, and September 14, 1936, which proclamations, he contends, resurrected the general appropriation act of 1933, so that revenues coming to the State in 1936 could be applied to the payment of the difference between the "original" appropriations in said act and the amount of such appropriations as "reduced" or "annulled" by the act itself, which "reduced" or "annulled" appropriations were by the act itself, in the event of a deficiency in revenue, declared to constitute the appropriation made. We have previously shown that the salary of petitioner was fixed by law, and that a continuing appropriation was made for the payment thereof; but that such appropriation, in so far as its continuance without further authority from the legislature was concerned, was suspended, and became a part of and was merged into the lump-sum appropriation to the comptroller-general's department by the act of 1933. Under the terms of the act of 1933 all appropriations therein made, with certain exceptions not here material, were reduced pro rata in the amount of the deficiency of revenue receipts for the periods covered by the act (1934 and 1935), and the sums remaining after the application of this provision were made the appropriations for the purposes named in the act in lieu of the amounts therein fixed and set out. The legislature at its session in 1935 failed to pass a general appropriation act covering the year 1936, or for any period following the year 1935, at the end of which the last preceding general act of 1933 ceased to be of force, if it is to be given effect according to its own terms, as hereinbefore disclosed. So far as is here material, each appropriation made by the act of 1933 was "reduced" or "annulled" to the extent that

the revenue for the respective years covered by the act was insufficient to pay the same; and therefore the amount of the reduction or annullment could not be resurrected and be made payable out of revenues coming to the State in years not covered by the act, in the absence of further legislative authority. Code, §§ 2-1811, 2-1810, 2-1809, 2-1812; Colbert v. State, 86 Miss. 769 (39 So. 65); Humbert v. Dunn, 84 Cal. 57 (24 Pac. 111); Ristine v. State, 20 Ind. 328, 337; State v. Eggers, 29 Nev. 469 (91 Pac. 819, 16 L. R. A. (N. S.) 630); 59 C. J. 197, 235, §§ 341, 381, Id. 258, § 382, and cit.; 12 C. J. 898, § 402; Heyward v. Long, 178 S. C. 351 (183 S. E. 145); see also Walker v. Georgia Railway & Power Co., 146 Ga. 655 (92 S. E. 57); 59 C. J. 114, § 130.

■ Having determined that the petitioner was entitled to more salary than was paid him for the years 1933 and 1935, it is now necessary to decide whether he is entitled to have the comptroller-general perform the acts prayed for. The comptroller-general is not authorized to draw a warrant upon the State treasurer. Code, §§ 40-1102, 40-204. Under the evidence the judge was authorized to find that the entire appropriation to the comptroller-general's department for the two years last mentioned was paid to that officer by the treasurer, and therefore that the fund in the treasury appropriated to the payment of the petitioner's salary was exhausted. The Code, § 40-1505 (7), declares that it is the duty of the comptroller-general "to see that no draft or warrant shall be countersigned by him to be paid out of any appropriated fund after the same shall have been exhausted; and in such case, or any case of illegal payments from the treasury upon warrants countersigned by the comptroller, he, as well as the treasurer, with all their securities, shall be jointly and severally liable upon their several bonds for the repayment of such amounts, with all expenses of prosecution, to the State." In view of this provision of the Code and the evidence, the petitioner was not entitled to an order compelling the comptroller-general to issue a warrant upon the treasurer, or to request the Governor to issue a warrant and upon the issuance thereof to countersign the same. However, when the appropriations for the expense of operating the comptroller-general's department, which included the funds appropriated for the payment of petitioner's salary, were paid over to the comptroller-general, it was his duty to pay out said sums for the purposes

appropriated; and if such funds, after being paid over to the comptroller-general by the treasurer, were not disbursed and paid over to the obligees of the State entitled thereto, but were used for other purposes, such fact would constitute no defense to a mandamus action seeking to compel the comptroller-general to issue a voucher or check on his personal account as comptroller-general in the bank in which such funds were kept. Neither would the fact that the funds in such account could not be legally applied to the payment of such claim constitute a defense thereto. See, in this connection, *Gard* v. *Board of Education,* 183 *Ga.* 82 (5) (187 S. E. 109); *Mattox* v. *Board of Education of Liberty County,* 148 *Ga.* 577 (97 S. E. 532, 5 A. L. R. 568); *Aaron* v. *German,* 114 *Ga.* 587 (40 S. E. 713); *Hutcheson* v. *Manson,* 131 *Ga.* 264 (62 S. E. 189).

Headnotes 6, 7, 8, and 9 do not require elaboration.

*Judgment reversed. All the Justices concur.*