STANLEY, chairman, *et al. v.* SIMS.

No. 12000.　February 19, 1938.

*M. J. Yeomans, attorney-general, Marshall L. Allison,* and *Dave M. Parker,* for plaintiffs in error.

*Poole & Fraser,* contra.

BELL, Justice. On April 6, 1937, Ralph G. Sims filed a suit for the writ of mandamus against H. M. Stanley in his capacity as chairman of the Industrial Board, and Sharpe Jones in his capacity as secretary-treasurer of the board. The purpose of the suit was to require the defendants to pay to the plaintiff the sum of $522.17 as salary which he claimed was due to him as a director of the Department of Industrial Relations from February 6 to March 25, 1937. The petition alleged that the plaintiff was appointed as such director on or about September 30, 1936, and was paid a salary of $333.33 per month, under appropriation by the legislature. The payments of his salary were in the form of checks issued by the Department of Industrial Relations through H. M. Stanley "as the administrative head of said industrial board," and Sharpe Jones as secretary-treasurer. The plaintiff received his salary as such director up to and including February 6, 1937, but the defendants have failed and refused, after demand, to pay to the plaintiff the salary which has accrued to him since that date. On March 25, 1937, the office held by the plaintiff was abolished by the General Assembly. From February 6 to March 25, 1937, the plaintiff reported daily and regularly for work before the Department of Industrial Relations, and performed every duty required of him during this period. The plaintiff has earned as salary the sum of $522.17, which the defendants failed and refused to pay, although the defendants in their official capacities "have in their possession a sum of money appropriated by the General Assembly for the purpose of paying said sum to your petitioner." The prayers were for the writ of mandamus directing the defendants to issue a voucher for the sum claimed, and for process. The defendants filed a demurrer containing the following grounds: (1) The petition sets forth no cause of action against the defendants. (2) The petition shows on its face that it is in purpose and effect a suit against the State of Georgia, and no consent of the State to be sued is alleged. (3) It does not allege that the appointment of the plaintiff, Ralph G. Sims, as a director in the Department of Industrial Relations, was confirmed by the Senate of the State of Georgia, as required by law. (4) The petition does not show

clear authority of law in support of the claim of the plaintiff for salary, so as to entitle him to have it allowed. (5) It does not appear that the plaintiff has a clear legal right to have the particular act sought by his petition performed. (6) The ultimate facts upon which the right of the plaintiff to the writ of mandamus is based are not alleged, the allegations of the petition being merely evidential facts not supporting a conclusion as to the ultimate fact necessary to be alleged.

Subject to their demurrer, the defendants filed an answer admitting substantially all of the facts alleged by the plaintiff, but not the legal conclusion, and denying that any salary was due to the plaintiff or has accrued to him since February 6, 1937. The answer admitted that the defendants have in their possession funds appropriated by the General Assembly for the purpose of paying the operating expenses of the Industrial Board, and alleged that the plaintiff was not entitled to the salary for the following reasons: The plaintiff was appointed as a director in the department of Industrial Relations to succeed W. F. Slater whose term expired on October 1, 1936, but the plaintiff's appointment was not confirmed by the Senate. The nomination of the plaintiff was submitted to the Senate on January 11, 1937, on the day it convened in the ten-day session, and was returned by that body to the Governor on January 13, 1937, without action. It then became the duty of the Governor to make a new appointment to the office. "On February 2, 1937, the Governor appointed Arlie D. Tucker to the office formerly held by the plaintiff, and his appointment and nomination was confirmed by the Senate of the State of Georgia on March 25, 1937. For these reasons, defendants say that Arlie D. Tucker has held the office of director of the Industrial Relations, now the Industrial Board, since February 2, 1937, and that since said date the plaintiff has had no right to the office or to the salary thereof. The plaintiff was out of the office on certain work for the department on February 2, 1937, and he continued to work throughout that week as a deputy and was paid for his services to the end of the week, to wit February 6, 1937." The appointment of the plaintiff was not complete until confirmed by the Senate, and when the Senate failed or refused to confirm his appointment he was no longer entitled to the office, and "the appointment of his successor, followed by confirmation by the Senate, divested him of

all right, title, or interest in the office, and that the office has been legally held by his successor since February 2, 1937, and the salary paid to his successor, and the plaintiff is not entitled in law or equity to the salary claimed by him against the State in this proceeding." The bill of exceptions recites that on the hearing before the judge of the superior court "counsel for plaintiff agreed in open court that the facts as set up in the answer were admitted as true, and counsel for both sides thereupon agreed to submit the case on the pleadings." The judge overruled the demurrer to the petition, and granted a mandamus absolute. To these judgments the defendants excepted.

■ We are not concerned with the question whether the office alleged to have been held by the plaintiff was abolished on March 25, 1937, or whether its name was merely changed, since the plaintiff is not claiming salary for any period after that date. But see, in this connection, Ga. L. 1937, p. 230. Did the court err in overruling the demurrer upon any ground? The plaintiff alleges that he was appointed as a director on or about September 30, 1936, and that he was paid a salary as director from that time until February 6, 1937. While the plaintiff does not say in express terms that he was appointed by the Governor, he could not have been appointed by any other official; and the presumption is that the defendants would not have paid him salary for a period of more than four months, as alleged, unless he was so appointed. Code, § 54-101. By an act approved August 28, 1931, it was provided that where "it shall be incumbent upon the Governor to appoint a public officer subject to confirmation of or by and with the advice and consent of the Senate, the office shall be deemed vacant at the expiration of the term of such officer, and he shall not hold over until his successor shall have been appointed and confirmed. The Governor is hereby empowered to make an appointment to fill such vacancy ad interim, which appointee shall hold office until the Senate shall next convene, and the Governor shall then submit an appointment to fill such vacancy to the Senate for confirmation; the appointee, if confirmed, shall hold over until the expiration of the term for which he was appointed; provided, however, the Governor shall not appoint ad interim any person previously rejected by the Senate." Ga. L. 1931, pp. 7, 45; Code, § 40-302. This court judicially knows that the Senate was not in session on the date of the plain-

tiff's alleged appointment, or at any time thereafter until January 11, 1937. In view of these facts and of the foregoing statute, the petition should be construed as showing an ad interim appointment by the Governor for the period fixed by law in such case.

The next question is whether it appears that the plaintiff continued to be a director of the Department of Industrial Relations during the period for which salary is claimed. "All laws and resolutions of the General Assembly and the journals of each branch thereof . . shall be judicially recognized without the introduction of proof." Code, § 38-112; *DeLoach* v. *Newton,* 134 *Ga.* 739, 758 (68 S. E. 708, 20 Ann. Cas. 342); *Whitley* v. *State,* 134 *Ga.* 758 (4) (68 S. E. 716). It is contended by counsel for the defendants that under the act of 1931 the plaintiff's tenure continued only "until the Senate shall next convene," and expired on the organization of that body, on January 11, 1937. We cannot agree with this contention. Manifestly, the phrase "until the Senate shall next convene" does not refer to the short session of ten days as contemplated by the amendment to the constitution proposed in 1931 and ratified in November, 1932. Ga. L. 1931, p. 1053. This is true for the reason that this amendment was not in existence as such at the passage of the act of 1931. Ga. L. 1931, pp. 7, 45. Whether or not it refers only to regular sessions as distinguished from extraordinary sessions, as applied to the instant case it could have reference only to the general or regular session following the short or ten-day session in 1937. Another reason for this conclusion is that the confirmation of appointments could not be made at the short session. Constitution of Georgia, article 3, section 4, paragraph 3 (Code, § 2-1503); and see opinion of Hon. M. J. Yeomans, Attorney-General, Senate Journal 1937, pp. 66-70. The short session for that year began on January 11, and the regular session on January 25. Senate Journal 1937, pp. 1, 112, 546, 613. The same journal at pages 66 and 77 discloses that proposed appointments by the Governor were returned to him on January 13 without action. At page 2386 it appears that the Senate "received" and confirmed the nomination or appointment of Hon. Arlie D. Tucker "to be a director of the Industrial Commission for a term beginning February 2, 1937, expiring September 29, 1940." If it can be done reasonably, the act of 1931 must be construed in harmony with the constitutional provision that "When any office shall

become vacant, by death, resignation, or otherwise, the Governor shall have power to fill such vacancy, unless otherwise provided by law; and persons so appointed shall continue in office until a successor is commissioned, agreeably to the mode pointed out by this constitution, or by law in pursuance thereof." Code, § 2-2614; *Fordham* v. *Sikes,* 141 *Ga.* 469 (81 S. E. 208); *Bennett* v. *Wheatley,* 154 *Ga.* 591 (115 S. E. 83). If the tenure of the plaintiff was terminated at the convening of the regular session on January 25, then there was no one to fill the duties of the office until an appointment was made by the Governor and confirmed by the Senate. In *Gormley* v. *Taylor,* 44 *Ga.* 76, 81, this court, in construing a similar provision of the constitution of 1868, said: "The constitution does not intend that there should fail to be an incumbent, since it provides, that in all cases where no other provision is made, if any office become vacant, the Governor shall fill the vacancy until the office is filled in the mode provided for filling it permanently." In the act of 1931 *as codified* the word "when" is substituted for the word "and" after the word "convene," but this was not such a material change as to affect the meaning of this law. The word "until" is sometimes used as a restrictive term, meaning up to a certain time, place, or event. 66 C. J. 6. But this construction is not of universal application, and the effect to be given such a word depends upon the intention with which it is used, as manifested by the context and considered with reference to the subject-matter to which it relates. In 62 C. J. 986, it is stated that "the use of such words has been held, in accordance with the usual rule of exclusion and inclusion, to exclude the first day of the period and include the last, the day designated, especially where the word is used with reference to a future day on which something is required to be done." In North Dakota a statute provided that if the appointment of a designated officer should be made when the legislature was not in regular session, the appointee should hold the office "until" the third Monday in January in the next biennial session of the legislature. The Supreme Court of that State, in construing this statute, held that the word "until" *included* such third Monday in January. State *v.* Jorgenson, 25 N. D. 539 (142 N. W. 450, 49 L. R. A. (N. S.) 67). If the word can be so construed as to the period of one day, why should it not be given the same meaning as to a time or event of longer duration, as for

instance a session of the Senate? If instead of the phrase "until the Senate shall next convene" the language had been "until the next session of the Senate," the phrase could be easily construed as including such session, or, in view of the context, until such time as an appointment is confirmed during the session; and this we think is the meaning of the language used.

There is a general statutory provision that all officers must discharge the duties of their offices until their successors are commissioned and qualified (Code, § 89-105; *Shackelford* v. *West*, 138 *Ga.* 159, 74 S. E. 1079), but the act of 1931 seems to have worked a change in this law as to officers who are appointed by and with the advice and consent of the Senate. We are therefore construing the act under consideration without reference to the earlier statute; but we can not overlook the constitutional provision that when any office shall become vacant the Governor shall have power to fill such vacancy, unless otherwise provided by law, and persons so appointed shall continue in office until a successor is commissioned, agreeably to the mode pointed out by this Constitution, or by law in pursuance thereof. Code, § 2-2614, supra. In view of what has been said, it is our opinion that the act of 1931, as applied to the instant case, should be construed as meaning that the plaintiff as an ad interim appointee was entitled to hold the office until an appointment was submitted by the Governor to the Senate and confirmed, during the regular session of 1937, and until the appointee was commissioned according to law. Whether or not the plaintiff's tenure would have expired on the adjournment of the Senate without action on the subject by that body is a question which is not involved by this record and as to which we express no opinion. The appointment of Mr. Tucker was not complete or effective until confirmed on March 25, and from the allegations of the petition and facts which must be judicially recognized, it is apparent that the plaintiff held office until that date. *Milton* v. *Mitchell*, 139 *Ga.* 614 (77 S. E. 821); 46 C. J. 953. Since it is true that the appointment of Tucker, whether made on February 2 or March 25, was not effective until confirmed, it necessarily follows either that the plaintiff held the office until the date of such confirmation, or that from the convening of the Senate on January 25 until the confirmation of Tucker on March 25, that is, for a period of two months, the office was in law vacant in that there was no person who was law-

fully authorized to discharge the duties thereof. Such a result would not be in keeping with the intent of the constitution, and from the language employed we cannot think that any such result was intended by the legislature. "The constitution does not intend that there should fail to be an incumbent" to discharge the duties of the office (*Gormley* v. *Taylor*, 44 *Ga.* 76) ; and yet, in view of the many duties devolving upon the Governor and the Senate at the opening of each session, to say nothing of the possibility of disagreement, an extended vacancy might often occur if the person holding ad interim must relinquish the office the very instant the Senate convenes.

There is no merit in the contention that the petition did not show a clear legal right in the plaintiff to have performed the particular act the doing of which he seeks to have enforced. Nor is the petition defective as against a general demurrer in that it merely alleges evidentiary facts which do not support the ultimate fact or conclusion.

The suit is not an action against the State, as contended by the defendants. "All official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper performance, the writ of mandamus may issue to compel a due performance, if there shall be no other specific legal remedy for the legal rights." Code, § 64-101. The petition shows that the plaintiff was a director for the period in question. It alleges that the defendants have in their possession a sum of money appropriated by the General Assembly for the purpose of paying the salary claimed, but which the defendants have failed and refused to pay after demand. The statute fixes the salary (Code, § 54-105), and provides that the salaries of directors shall be paid out of the funds in the hands of the secretary-treasurer, according to rules and regulations prescribed by the department. Code, § 114-701. No question is presented as to the existence of an appropriation. The plaintiff's right to salary being clear, and the defendants having in hand an appropriated sum sufficient to pay it, it was their official duty to do so. The plaintiff is seeking to enforce a ministerial duty only, and there is no issue between him and the State. In Louisiana Board of Liquidation *v.* McComb, 92 U. S. 541 (23 L. ed. 628), it was said: "A State, without its consent, can not be sued by an individual; and a court

can not substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal inquiry by such refusal may have a mandamus to compel its performance." Such an action is not within the rule that a State can not be sued without its consent. As was again said by the United States Supreme Court in Rolston v. Missouri Fund Com'rs, 120 U. S. 390 (7 Sup. Ct. 599, 30 L. ed. 721, 728), "the litigation is with the officer, not the State." In re Ayers, 123 U. S. 443 (8 Sup. Ct. 164, 31 L. ed. 216), it was said that the rule as to immunity of the State does not "forbid suits against officers in their official capacity either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest," See also Pennoyer v. McConnaughy, 140 U. S. 1 (11 Sup. Ct. 699, 35 L. ed. 363) ; 25 R. C. L. 414, § 50; 18 R. C. L. 192, § 116; 38 C. J. 667, 671, §§ 213, 217; and the following physical precedents: *Talmadge* v. *Cordell,* 167 *Ga.* 594 (146 S. E. 467) ; *Talmadge* v. *Cordell,* 170 *Ga.* 13 (152 S. E. 91, 155 S. E. 928) ; *Talmadge* v. *McDonald,* 171 *Ga.* 593 (156 S. E. 318) ; *Bankers Savings & Loan Co.* v. *Better Business Division,* 177 *Ga.* 334 (170 S. E. 291) ; *Irons* v. *Harrison,* 185 *Ga.* 244 (194 S. E. 749). The present case differs on its facts from *Ramsey* v. *Hamilton,* 181 *Ga.* 365 (182 S. E. 392), in which citizens and taxpayers sued for injunction to restrain State officers from acting under a statute alleged to be unconstitutional. While the writer has never been satisfied with that decision, and concurred only in the result at the time, clearly there is a difference between a suit for injunction brought against a State officer under general equitable principles, and a suit for mandamus to enforce an official duty, as expressly authorized by law. Code, § 64-101. The court did not err in overruling the general demurrer.

■ Counsel for the plaintiff agreed in open court that the facts were as pleaded in the answer, and counsel for both sides agreed to submit the case on the pleadings. Under the rulings stated in the preceding division, the facts alleged in the answer did not show a valid reason for the failure of the defendants to pay

the sum claimed by the plaintiff as salary. The possession of funds sufficient for that purpose was admitted, and the fact that salary may have been paid to Mr. Tucker since February 2 does not defeat the plaintiff's action. *Irons* v. *Harrison,* supra.

*Judgment affirmed. All the Justices concur.*