DUNN *et al.,* barber examiners, *v.* MEYER.

No. 13905.   OCTOBER 15, 1941.   REHEARING DENIED NOVEMBER 13, 1941.

*Ellis G. Arnall, attorney-general, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* for plaintiffs in error.

*A. L. Alexander, Hirsch, Smith, Kilpatrick, Clay & Cody,* and *Devereaux F. McClatchey,* contra.

DUCKWORTH, Justice. ■ The petition is based on the Code, § 84-405, where it is declared: "Each member of said board shall receive a compensation of $10 per day for actual services, and in addition thereto actual expenses while in attendance upon meetings of the board and actual traveling expenses, which compensation shall be paid out of moneys collected under the provisions of this chapter, after an allowance thereof by the board upon an itemized and verified claim therefor, approved by the chairman of the board, being filed with the joint-secretary, State Examining Boards, by the member claiming the same. In no event shall any part of the expenses of the board or any member thereof be paid out of any other funds." The plaintiff sought to recover the difference between $7.50 per day for 812 days, which he admitted was

actually paid, and the $10 per day fixed by the statute. We reject the contention of the defendants that the statute should be construed to fix the compensation of the board members only for services rendered in attending meetings of the board. The language of the Code section itself will not bear such construction, and reference to the original act (Ga. L. 1914, p. 75) discloses that, in originally fixing the per diem compensation, section 5 of that act provides that such compensation shall be for services rendered in attending to the business of the board. In section 4 it is provided that any member of the board shall have power to enter and inspect the sanitary condition of barber-shops, and that for a violation of the sanitary rules promulgated by the board the license to operate a barber-shop may be revoked. Thus it is clear that the legislature intended that such inspection by members of the board should constitute business of the board, and that the compensation therefor should be that fixed in section 5 of the act. The plaintiff alleges that there were at the time, and at all times since have been, sufficient funds available that could be lawfully applied to the payment of his claim. A cause of action is set forth, and the judgment overruling the general demurrer to the petition is sustained. *Moseley* v. *Garrett,* 182 *Ga.* 810 (187 S. E. 20) ; *Freeney* v. *Pape,* 185 *Ga.* 1 (194 S. E. 515) ; *Best* v. *Maddox,* 185 *Ga.* 78 (194 S. E. 578) ; *Irons* v. *Harrison,* 185 *Ga.* 244 (194 S. E. 749).

■ The evidence, either by way of stipulation or of testimony of the plaintiff, presents a case of waiver by the plaintiff of his right to recover the unpaid balance of compensation fixed by the statute. The Code, § 102-106, declares: "Laws made for the preservation of public order or good morals can not be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest." In *Mac-Neill* v. *Steele,* 186 *Ga.* 792 (199 S. E. 99), it was held that since the salary of court bailiffs was fixed by law, the bailiff could not waive any portion of such salary and would not be bound by any agreement to accept less than the salary which the law fixed. That decision was based upon the rule that an officer's right to his salary does not grow out of a contract by which it is payable, but that the compensation belongs to the office, is an incident to the office, and

that the official is entitled to it, not by force of any contract, but because the law attaches it to the office. We recognize that the ruling in the *MacNeill* case conforms to the general rule consistently applied by this court in cases of the nature there dealt with. But the instant case is materially different, in that the law does not fix a lump sum salary per year or for any other period for a member of the board, except when he goes further than merely qualifying and assuming the title of his office and actually renders services, the compensation allowed him by law being restricted to such time · and such time only as is consumed by the officer in rendering services. It is further conditioned or limited in that the officer is not free to decide for himself the amount of time he shall be permitted to serve, but this question depends entirely upon the will and judgment of the board as a whole. This is necessary to enable the board to faithfully perform the duties imposed by law. The same Code section which provides for the per diem compensation further provides that this "compensation shall be paid out of moneys collected under the provisions of this chapter, . . [and] in no event shall any part of the expenses of the board or any member thereof be paid out of any other funds." Thus the law limits the services and expenses to a designated fund, and imposes upon the board the duty of limiting both services and expenses to the extent of bringing them within the funds available to pay the same. A case very similar in principle is that of *Barfield* v. *Atlanta,* 53 *Ga. App.* 861 (187 S. E. 407). There the municipal authorities who reduced the salary of the firemen had the power to discontinue their services, but in consideration of the agreement by the firemen to accept compensation less than that provided by ordinance they were permitted to retain employment. The Court of Appeals held that this agreement constituted a waiver by the employee of a portion of his salary, that this waiver agreement had been actually executed by the payment of the money agreed on, and that the fireman was estopped from thereafter asserting a claim to the unpaid balance. It was recognized by this court in *MacNeill* v. *Steele,* supra, that the *Barfield* case was sound, and because of the facts there involved did not come under the general rule that a public officer can not waive a part of his salary.

In the present case, if the petitioner, at any time during the period of nearly three years covered by his claim, had refused to

abide by the agreement and accept the reduced compensation, the board could have kept its total expenditures at the same level by simply reducing the number of days that the petitioner would be allowed to work, and in that way the board would have discharged its duty in executing the trust imposed by law of properly expending the available funds and keeping expenditures within the assets available. To allow the petitioner, by pretending that he was satisfied with the amount received and thereby obtain additional employment throughout his term of office, and, when he could no longer obtain any employment, then to repudiate his agreement with the board of which he was a member, and recover the unpaid balance of compensation, would give him an advantage unwarranted by law. The only limitations which the law places upon the power of an individual to waive rights which the law has established in his favor are that he must not thereby injure others or affect the public interest. Neither of these grounds is present in the instant case. The rule applicable to the facts is stated in the Code, § 20-1204, as follows: "An agreement by a creditor to receive less than the amount of his debt can not be pleaded as an accord and satisfaction, *unless it be actually executed by the payment of the money.*" (Italics ours.) Here the evidence showed that the petitioner, although entitled to $10 per day for services actually rendered, both as a member of the board and as an individual, agreed that, if permitted to serve as many days as the funds available would pay for, he would accept $7.50 instead of demanding $10 per day as fixed by the statute, and this waiver or agreement was "actually executed by the payment of the money," and hence under the statute estops petitioner from now asserting a claim to the unpaid balance. In *Tyler Cotton-Press Co.* v. *Chevalier*, 56 *Ga.* 494 (5), it was said: "An executed agreement to receive less than the amount of the debt due, by actual payment of the money agreed upon, can be pleaded as an accord and satisfaction, and will estop the party so receiving the money from asserting his claim to the balance." The Court of Appeals has repeatedly followed the rule just quoted. *Pendergrass Banking Co.* v. *Murphy*, 31 *Ga. App.* 386 (120 S. E. 670); *King* v. *Liberty National Life Insurance Co.*, 59 *Ga. App.* 496 (1 S. E. 2d, 223); *Whatley* v. *Troutman*, 60 *Ga. App.* 23 (2 S. E. 2d, 731); *Walbridge* v. *Jacobs' Pharmacy Co.*, 60 *Ga. App.* 404 (3 S. E. 2d, 876).

While neither party has raised the question whether the pleadings are sufficient to enable the defendants to avail themselves of the defense of waiver, yet we think that this question should be considered. It is provided in the Code, § 81-307, that "Under a denial of the allegations in the plaintiff's petition, no other defense is admissible *except such as disproves the plaintiff's cause of action;* all other matters in satisfaction or avoidance must be specially pleaded." (Italics ours.) The Court of Appeals held, in *Pilgrim Health & Life Insurance Co.* v. *Jenkins,* 47 *Ga. App.* 441 (3) (170 S. E. 687), that accord and satisfaction or settlement is matter in satisfaction or avoidance which must be specially pleaded. Sustaining the same rule, see 1 C. J. S. 550, § 47. The defendants are relieved from a strict compliance with this general rule, by virtue of averments in the petition together with evidence introduced thereon by the plaintiff and stipulation of facts agreed to by both parties. Paragraph 6 of the petition alleged that "on April 3, 1933, the then members of the Board of Barber Examiners passed a resolution reducing the compensations of petitioner twenty-five per cent, from $10 per day to $7.50 per day for actual services rendered." Paragraph 12 alleged that between April 3, 1933, and November 11, 1935, the petitioner actually served said board as a member thereof for 812 days, for which he received $6090, being compensation at the rate of $7.50 per day. Paragraph 13 alleged "That petitioner did not consent to said reduction of his compensation, and has never consented thereto, and made a protest to the chairman of said board and to the joint-secretary of the State examining boards at the time said resolution was passed on April 3, 1933." The petition thus states a case of payment of less than the amount provided by law, and attempts to avoid the effect of waiver by negativing this fact with the assertion that he did not consent thereto, but protested. When we look at the evidence on these questions it is found that the plaintiff consented to a stipulation of fact showing that on April 3, 1933, he as a member of the board was the author of the motion, which was unanimously adopted by the board, fixing the compensation of the members at $7.50 per day. It is evident that this action of the board resulted from a shortage of funds, because the motion of the plaintiff contains the language "continue with reduced expense accounts according to recent ruling received for the

remainder of the year beginning April 5, 1933, working six days per week, provided money is available." An affidavit made by the plaintiff is in evidence; and while not denying that he made the motion before the board, it states that he does not remember, and sets forth, as a ground for avoiding his action on the board and his agreement to accept the reduction in compensation, that at the time it was reported that the Secretary of State had suggested a reduction in compensation, and that the chairman stated that the Governor had the power to oust the members of the board from office if they refused to reduce compensation. These facts constitute neither coercion nor justifiable excuse for relieving the plaintiff from the full effect of his official action as a member of the board in reducing the compensation, or his individual action over a period of three years in making claim only for the reduced amount and accepting payment thereof without complaint. He sought primarily to recover a sum of money, and it was not essential to his action that he plead facts to negative a waiver; but having voluntarily pleaded such facts and having introduced evidence and consented to a stipulation of facts bearing thereon, although disproving portions of his petition, he will not now be permitted to challenge the right of defendants to avail themselves of the defense shown by such pleadings and evidence. The plaintiff could have pleaded merely a case of a claim to unpaid compensation, but instead he pleaded a case showing that the unpaid balance resulted from a resolution of the board and his acceptance of the reduced amount over a period of nearly three years; and his claim to unpaid compensation is based upon a statute that leaves to the judgment of the board the right to determine the quantity of services which the member shall be allowed to render. This court will not disregard these pleadings and this evidence. We follow the rule stated in *Saulsbury* v. *Weaver*, 59 *Ga.* 254 (2), to wit: "Where the plaintiff himself proves the contract sued upon to be one of suretyship on the part of a married woman (one of the defendants in the action), no special plea is requisite to make the evidence available to her defense." The petition attempts to negative waiver. The plaintiff's evidence and evidence agreed to by him shows a waiver. Under these circumstances, as stated in the rule above quoted, "no special plea is requisite to make the evidence available for [the] defense." The judgment granting mandamus absolute was contrary to law and the evidence.

*Judgment reversed in part, and affirmed in part. All the Justices concur.*