State ex rel. Campbell vs. Auditor.

No. 9402.

THE STATE EX REL. JOHN A. CAMPBELL VS. O. B. STEELE, AUDITOR.

A *mandamus* lies to compel the State auditor to issue his warrant on the State treasurer for the payment of a valid claim recognized by law, to meet which, an appropriation was made by the legislature.

The holder of such claim is authorized to refuse a warrant drawn against a general fund to the credit of a particular year; when the law directs payment to him from *any* money in the treasury not appropriated, and when there is not money enough to the credit of that fund, for that year, to satisfy that warrant.

Such holder can require the auditor to issue to him another warrant on the treasurer, to be paid out of the general fund at the time in the treasury, unappropriated. and to the credit of another year, out of which it can be paid.

The State auditor has no authority to restrict the payment of the holder of *such* claim, to the general fund of a particular year, out of which it could not be paid.

Under the terms of the concurrent resolution of the General Assembly, No. 124, adopted subsequently to Act No. 28 of 1884, the beneficiaries therein named are entitled to a distribution among themselves, only of the *surplus* or *residue* of the general fund of 1883, remaining after payment of the claim recognized by Act 28 in favor of the relator; which makes the necessary appropriation to meet the same, out of money at the time in the treasury.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess*, J.

*Alfred Goldthwaite* and *T. L. Bayne* for the Relator and Appellee.

*M. J. Cunningham*, Attorney General, for Defendant and Appellant.

*Wm. A. Seay* for the Intervenors, Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The relator avers that he holds a valid claim against the State, to meet which the legislature has made an appropriation directing its payment out of any money in the treasury, not appropriated.

He complains that the State auditor refuses to issue in his favor a warrant for the amount thereof, $25,145.50, to be paid from the general fund of 1883, their being sufficient money in the treasury to satisfy the same.

The auditor denies the right of the relator to such warrant. He avers that the money to which the relator refers is not in the treasury; that, if it were, it would, like the other money therein, be subject to superior claims which would absorb it.

An intervention was filed by certain police juries, setting forth a claim of $20,000, to be paid out of the surplus of the general fund of 1883 and of other years, under a concurrent resolution of the legisla-

ture of July 10, 1884. The intervenors deny the relator's right to be paid as claimed.

From a judgment making peremptory the *mandamus* sought by the relator, both the State auditor and the intervenors have appealed.

The claim of the relator is a valid claim.

By Act No. 28 of 1884, the legislature authorized the Governor to draw his warrant in favor of the relator for the sum of $25,145.50, to be paid out of any money in the treasury not appropriated.

This sum was allowed to be in full of all demand for professional services rendered by the relator, as counsel engaged to represent the State before the Supreme Court of the United States, in the suit against her by the States of New Hampshire and New York and in other suits in that Court and in other courts, relative to the Debt Ordinance of 1879.

The act was approved July 3, 1884, and was promulgated the next day.

On the 8th following, the Governor issued his warrant addressed to the auditor, directing him to pay to the relator the sum in question in accordance with Act 28.

The auditor offered a warrant against the general fund of 1884, which was declined, as it would not be paid in full, the relator claiming that the warrant should be drawn against the general fund of 1883, unappropriated, out of which the same could be paid in full.

The validity of the claim being thus clearly established, the next question which arises is whether an appropriation was made for its payment, and if so, what is that appropriation.

In the case of State vs. Bordelon, 6 Ann. 68, the meaning and purport of the word "*appropriate*" was inquired into, ascertained and announced.

The Court asked:

"What is the meaning of the word *appropriate*?" It is to allot, assign, set apart, apply anything to the use of a particular person or thing or for a particular purpose. This may be done without using the word "appropriate," and this act certainly does assign, allot and set apart a certain portion of the public moneys, not otherwise appropriated and directs the said portion to be paid to particular persons for a given purpose. There are no formal words required to be used in an appropriation bill. The constitution has not undertaken to direct what technical language shall be employed. This has been wisely left to the legislative power, and they seem to have exercised that right in this instance in such a manner as to leave no doubt as to what they intended

to do or of what they did. The language of this act must therefore be regarded as fully sufficient to constitute an appropriation." See Stratton vs. Green, 45 Cal. 149.

What the previous court then said we now reiterate as well applicable to the present matter.

Act 28 palpably recognizes the claim of the relator and orders it to be paid "from any money in the treasury, not appropriated."

It was passed while there was enough money in the treasury to pay it, and before any appropriation of it to any other object to prevent or impair its payment.

The General Assembly most probably understood the exact condition of this fund then and employed the language used in the act to cause its application to the admitted indebtedness.

The words of the act are entirely sufficient to accomplish this end, by charging that fund and any other fund in existence with a reserve for that purpose.

The legislature did not propose to postpone the payment of the claim. They contemplated to have it paid from any money in the treasury which had not been previously specifically destined, set apart or appropriated for another object.

The relator further averred that there was, and there is still, money in the treasury out of which his claim can be satisfied in full.

It is admitted that the remitted interest of 1879, retained in the treasury by the services of the relator, amounted to $323,167, and that on the 10th of May, 1883, there was transferred from the same to the general fund of that year $25,671.90. It is also admitted that at the time the warrant offered by the auditor was declined, there was $124,000 in the treasury to the credit of the same fund, which, on the day of trial (October 22, 1884) had been reduced to $37,000. It however appears by the treasurer's account, dated that day, that there was to the same credit a cash balance of $38,815.45 in the treasury.

It is therefore quite clear that, when Act 28 took effect, July 5, 1884, there was in the treasury $25,145.50 of the remitted fund of 1879, transferred on May 10, 1883, enough to pay relator.

The question of identity of the funds is not material for the determination of this controversy.

The fact is, that there was in the treasury, at the date of the act, a large amount of money to the credit of the general fund of 1883, and that part of it was appropriated by the legislature for the benefit and

relief of relator, the balance remaining subject to subsequent appropriations.

The State auditor has no authority to restrict the payment of the relator's claim to the general fund of any particular year out of which it could not be paid.

We do not think it necessary to notice the intervention further than to say that, whatever the rights be which the intervenors claim under the concurrent resolution of the General Assembly, on which they rely, they cannot assert any demand entitled to priority or precedence over that of the relator.

The resolution directs the transfer only of the *surplus* of the general fund of 1883, for distribution among the beneficiaries named, that is, the *excedent* of that fund on hand, on the day on which the resolution was adopted, after deduction from the general fund of the amount of the relator's claim, as approved and ordered to be paid out of any money in the treasury, not otherwise appropriated, on the 3rd of July, 1884.

Their rights, whatever they be, extend only to the *residue*, after payment of the relator.

The record does not show that any one else claims priority over the relator and there is no evidence of the existence of any claim superior to his, for payment out of the general fund of 1883.

It is therefore ordered and decreed that the judgment appealed from be affirmed with costs.