Dear Mr. Rattler:
You have requested an opinion of the Attorney General regarding the legal propriety of the State Treasurer (Treasurer) withholding funds due to political subdivisions allegedly delinquent in their submission of retirement contributions to their respective retirement boards. You specifically ask whether the transfer of funds by the Treasurer to the various boards is constitutionally permissible. You also reference Attorney General Opinion 89-455.
In your request, you refer to LSA-R.S. 17:992.1(A) as the statutory authority for certification by the Board of Trustees of the School Employees' Retirement System (Board) to the Treasurer, and her subsequent transfer of funds. This provision was superseded by LSA-R.S. 11:1202, as a result of the consolidation in Title 11 of all legislative enactments affecting retirement systems, plans, and funds within the State of Louisiana. Section 1202(A)(1) and (2) provides:
 "A. (1) Should any parish or city school board or other employer refuse to transmit either employer's contributions or member's contributions within fifteen days after its due date, the payment shall be delinquent.
 (2) Upon a certification to the state treasurer or the Department of Education by the board of trustees of the School Employees' Retirement System of Louisiana that a payment is delinquent, the state treasurer or the Department of Education shall deduct the amount thereof from any monies then available for distribution to or for the benefit of that parish or city school board, college or university, or vocational and technical school or other agency or employer and shall transmit said amount directly to the board of trustees." (Emphasis added.)
Provisions similar to the one above are found at LSA-R.S.11:2225(A)(11)(c) for the Municipal Police Employees' Retirement System, 11:887(A) for the Teachers' Retirement System, and11:541 for the State Employees' Retirement System. In addition, LSA-R.S. 11:102(B)(2)(a) provides:
 "(a) If the amount of employer contributions received for the fiscal year is less than the actuarially required employer contribution for the fiscal year, due to the failure of the legislature to appropriate funds at the required employer contribution rate, the difference shall be paid by the state treasurer from the state general fund upon warrant from the governing authority of the retirement system." (Emphasis added.)
You question the application of these statutory provisions mandating the withdrawal of moneys from the State Treasury in light of Article III, Section 16(A) of the Louisiana Constitution of 1974. It provides:
 "Section 16. (A) Specific Appropriation for One Year. Except as otherwise provided by this constitution, no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year." (Emphasis added.)
Similar restrictions on the withdrawal of funds from the State Treasury are found in Article VII, Section 10 and LSA-R.S.49:314. Further, LSA-R.S. 49:307, setting forth the duties of the Treasurer provides that she shall "(2) disburse the public money upon warrants drawn upon [her] according to law, and not otherwise;"
At first glance, the constitutional provisions would appear to traverse the statutory authorization for transfers to the retirement boards. However, the constitutional provisions at issue contain the proviso, "Except as otherwise provided by this constitution . . . ." Thus, they must be read in pari materia with Article X, Section 29(E) — the constitutional mandate that state and statewide retirement systems be actuarially sound. It provides, in pertinent part, the following:
 "(E) Actuarial Soundness. (1) The actuarial soundness of state and statewide retirement systems shall be attained and maintained and the legislature shall establish, by law, for each state or statewide retirement system, the particular method of actuarial valuation to be employed for purposes of this Section.
 (2) For public retirement systems whose benefits are guaranteed by this constitution as is specified in Paragraphs (A) and (B) of this Section:
 (a) The legislature shall, by law, determine and set all required contributions to be made by members . . . .
 (b) The legislature shall, in each fiscal year, by law, provide an amount necessary to fund the employer portion of the normal cost, which shall be determined in accordance with the method of valuation established under (1) above.
* * *
 (d) Amounts provided for under (b) and (c) above are hereby guaranteed payable, each fiscal year, to each retirement system covered herein. If, for any fiscal year, the legislature fails to provide these guaranteed payments, upon warrant of the governing authority of the retirement system, following the close of said fiscal year, the state treasurer shall pay the amount guaranteed directly from the state general fund." (Emphasis added.)
As can be gleaned from the above article, the legislature and the electorate have constitutionally mandated the enactment of those laws necessary to carry out the intent of both lawmakers and constituents that retirement systems be actuarially sound. The issue presented is whether the laws enacted constitute the "appropriation" and "warrant" necessary to comply with the constitutional and statutory provisions relating to the withdrawal of funds from the State Treasury.
In the case of The State ex rel. John A. Campbell v. O. B. Steele, Auditor, (Sup.Ct. 1885), 44 La. 222, 37 La. Ann. 353, the Louisiana Supreme Court had before it the issue of whether Act 28 of 1884 constituted an appropriation. That Act provided in pertinent part as follows:
 ". . . the amounts aforesaid is authorized to be paid from any money in the treasury, upon the warrant of the Governor . . . ." (Emphasis added.)
The state auditor refused to issue a warrant in Campbell's favor for his fees. Act 28 authorized the governor to draw his warrant in favor of Campbell to be paid out of any money in the treasury not appropriated. The governor had issued his warrant addressed to the auditor directing him to pay the plaintiff. The court cited the case of State v. Bordelon, 6 La. Ann. 68, which held that an act appropriating money from the treasury need not use the word "appropriate". The court opined that no formal or sacramental words are required to be used in an appropriation bill because the constitution does not prescribe any technical or precise language. (See also: Crane v. Fronmiller, 45 P.2d 955; Craford v. Hunt, 17 P.2d 802; Irons v. Harrison, 194 S.E. 749; State v. Zimmerman, 197 N.W. 823). The Supreme Court, in Campbell, affirmed the decision of the lower court which had issued a writ of mandamus to the auditor requiring him to make the payments.
Applying the Campbell reasoning to the instant situation, we note a close factual and legal analogy. Both Article X, Section 29(E)(2)(d) and LSA-R.S. 11:102(B)(2)(a) direct payment to the systems ". . . upon warrant from the governing authority of the retirement system."
The other statutory provisions direct payment ". . . upon certification to the state treasurer . . . by the board of trustees . . . ." (Emphasis added.) Black's Law Dictionary defines "warrant" as merely, "An order by which the drawer authorizes one person to pay a particular sum of money." The term "certification" as used in the referenced statutes would appear to mean a formal assertion, in writing, containing a truthful statement of debt. As used in the statutes under scrutiny, it is our opinion that a "certification" is tantamount to a "warrant".
Thus, under the holding of Campbell, an authorization by the legislature [e.g., Article X, Section 29(E)(2)(d) and LSA-R.S. 11:1202 (1) and (2)] given to a retirement board to obtain funds from the State Treasury upon its warrant and/or certification, constitutes an appropriation as envisioned by the Louisiana Constitution. See Attorney General Opinion No. 85-878. It then follows that the Treasurer should honor the warrant, make the necessary deduction, and transfer same to the appropriate board.
The authority to withhold and transfer should extend only to those funds which the Treasurer is authorized to distribute. Funds under the distributive power of another Department (e.g., Minimum Foundation Program Funds) should be withheld by that Department (i.e., the Department of Education).
To the extent Attorney General Opinion No. 89-455 conflicts with the opinions expressed herein, said opinion is recalled.
Trusting this opinion answers your questions, I am,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0086R