Dear Treasurer Kennedy:
Reference is made to your request for an Attorney General's opinion regarding a letter (a copy of which is attached hereto for convenience) dated December 6, 2004, from the Director of the Municipal Police Retirement System (the "System") to your First Assistant. The letter requests that your office" deduct $243,112.37 from any monies available for distribution to the City of Kenner and transmit a check in the same amount to the System", citing as authority the provisions of LSA-R.S. 11:2227D(2)(a).
LSA-R.S. 11:2227D(2)(a) pertinently provides that delinquent payments of "accumulated contributions from the compensation of members" as referred to in LSA-R.S. 11:2227(B)(1) and "pension and benefits payable from contributions made by employers" as referred to in LSA-R.S. 11:2227D(1) may be recovered as follows:
 "Upon certification to the state treasurer and written notice to the municipality by the director that a municipality's monthly report and payment of contributions is delinquent, the state treasurer shall deduct the amount of the delinquent contributions from any monies then available for distribution to or for the benefit of that municipality and shall transmit said amount directly to the board of trustees of the retirement system. Upon making such a deduction, the state treasurer shall immediately notify the municipality that the deduction has been made and that the funds available for distribution to it are reduced accordingly"
You advise that at the time of receipt of the letter, there were no funds being held in the treasury that were then ready for distribution to the City of Kenner. However, certain funds are reported to you and payable to Kenner on a monthly basis, such as monies from the Video Draw Poker Device Fund. Additionally, other one-time or periodic payments will or may come available for distribution to the City of Kenner in the future.
You request the opinion of this office as to:
 "whether the attached facsimile letter request to us is sufficient under the provisions of the above cited statute and any other applicable provisions of law for the Treasury to withhold funds in the amount requested from those becoming distributable to the City of Kenner at the end of this month, and possibly thereafter, and to pay them to the requesting Retirement System."
Additionally, you seek our advice with respect to a number of specific questions, as set forth below.
Please be advised that in the opinion of this office, the attached facsimile letter is sufficient under the provisions of LSA-R.S.11:2227D(2)(a) and other provisions of law for the Treasury to withhold funds in the amount requested from funds becoming available to the City of Kenner for distribution at the end of the month, and thereafter, for payment to the System, subject to our advice, as set forth below, that immediately prior to any particular distribution your office obtain an updated certification from the director of the System that the funds previously certified to you as delinquent remain delinquent and unpaid.
Your specific questions, and our answers thereto, are set forth below.
 1. "Is this facsimile transmitted letter, addressed as it is, sufficient?"
We assume, with respect to this question, that you are interested in determining if your office is prohibited from honoring such a request on the basis that it is addressed to the First Assistant Treasurer, albeit at "The Office of the State Treasurer", as opposed to being addressed directly to you, as State Treasurer.
It is the opinion of this office that that you can honor a request addressed to your First Assistant, who in this regard acts as the agent of the Treasurer.
With respect to receipt by facsimile, we note that although LSA-R.S. 11:2227D(2)(a) requires "certification" to the Treasurer, it does not require a particular form of transmission for that certification, or that the certification be in original form or contain an original signature.
 2. "Must formal resolutions or other evidences of authority for the execution of this letter request on behalf of the Retirement System be included with it to satisfy the requirements of the above statute?"
LSA-R.S. 11:2227D(2)(a)contains no requirement that the certification to your office be accompanied by any resolutions or other evidences of authority on behalf of the Retirement System. Rather, the statute's use of the word "shall" indicates that you are required to deduct the amount of the delinquent contributions, as set forth in the statue, and transmit same to the System upon receipt of the required certification and evidence of the required notice to the affected municipality.
 3. "Does this facsimile letter adequately meet the requirements of the provisions of the above statute requiring" certification to the state treasurer and written notice to the municipality by the director that a municipality's monthly report and payment of contributions is delinquent
"(emphasis added)?"
In our opinion, the facsimile letter received by your office does constitute a "certification", as required by LSA-R.S.11:2227D(2)(a). LSA-R.S. 11:2227D(2)(a) does not require a particular form of transmission for that certification, or that the certification be in original form or contain an original signature.
This office has previously determined that the term "certification" as used in LSA-R.S. 11:1202A(2), a statutory provision pertinent to the School Employee's Retirement System and quite similar to LSA-R.S. 11:2227D(2)(a), means "a formal assertion, in writing, containing a truthful statement of debt", and that "such a `certification' is tantamount to a `warrant'.Attorney General's Opinion No. 93-399.[1] That definition of certification is consistent with that found in Black's Law Dictionary, 6th edition, which defines certification as "the formal assertion in writing of some fact."
The letter which is the subject of this opinion appears to meet the definition of a "certification", even though all your office has received is a facsimile transmission of the letter. As such, it is our opinion that you may accept the facsimile transmission as certification of the facts asserted therein. Please note, however, that in our opinion, if your office has some reason to question the veracity of this, or of any other facsimile transmission received by your office, we see no reason why you could not request an original document in place of the questionable facsimile.
It is our further opinion that you may consider the letter which is the subject of your request to be certification of "written notice to the municipality by the director that a municipality's monthly report and payment of contributions is delinquent".
In this regard, we note that the letter indicates that a copy thereof was forwarded to the City of Kenner. We note that the letter contains the following notation at its end: "cc: Mayor Philip L. Capitano", signifying that a copy of the letter was sent to Mayor Capitano at the same time the letter was sent to the addressee. In our opinion, this notation can be considered as the Director's certification that notice has been sent to the City of Kenner. Further, as the letter specifically refers to LSA-R.S.11:2227D(2)(a) as the basis for the requested deductions, it is our opinion that the letter can be considered as notification to the City of Kenner that the City is considered by the System to be delinquent in all respects referred to within the statutory provision, i.e., delinquent with respect to the contributions due as well as with respect to any required and untimely monthly reports.
 4. "Should there be a separate request/certification for each month of delinquent contributions, or may multiple months be properly included in one letter such as this one?"
In our opinion, your office may accept a single certification that certifies as to amount(s) due from a particular municipality for multiple months. As long as your office receives "certification" of the delinquent amount(s), we see no reason for your office to require the System to provide you with a separate certification for each month's delinquency.
 5. "What do the provisions of the above statute requiring the deduction to come from" any monies then available for distribution to or for the benefit of that municipality "from" any monies then available for distribution to or for the benefit of that municipality "(emphasis added) encompass? Do these provisions include future monthly or other periodic payments that are not yet ready or available for distribution at the time of receiving the request/certification? Do they continue to include all such future payments until the total amount requested has been deducted and paid to the Retirement System, if the initial available payment is not sufficient to cover the entire amount requested?"
In our opinion the reasonable interpretation of the words "monies then available" requires the words to be considered as meaning monies currently accessible or attainable (i.e. at the exact moment the certification is received) as well as meaning monies which become accessible or attainable in the future (i.e., as such monies are received or become distributable by the Treasury). As such, it is the opinion of this office that at the time of receipt of a certification the Treasury should withhold any monies currently held by it for the benefit of a municipality as well as any future payments the Treasury receives on behalf of the municipality if the initial available funds are not sufficient to cover the entire amount certified as delinquent.
Our opinion herein is based upon the assumption that when funds become available to the Treasury for distribution to a political subdivision, the funds are distributed to the political subdivision immediately, or as soon as reasonably possible. As such, if the statute were to be considered as only authorizing the withholding of funds available at the moment the certification is received, the only way the System could ever secure the funds referred to in LSA-R.S 11:2227D(2)(a) would be if the System provided you with a certification each and every time funds became available for distribution by your office to the City of Kenner, but before the funds were actually distributed to the City. To determine that LSA-R.S 11:2227D(2)(a) authorizes you to withhold only funds available at the moment the certification is received (if any are so available), could so limit the practical application of the provision as to make it unworkable. Our opinion in this regard is also consistent with Attorney General'sOp. No. 93-399, previously cited herein and enclosed herewith, which pertinently determined that La. Const. Art. X, Sec. 29(E) is indicative that both the legislature and the electorate have mandated the enactment of laws necessary for the state and statewide retirement systems to be and remain actuarially sound. Clearly, LSA-R.S. 11:2227D(2)(a) is such a law.
It is our suggestion that before you distribute any funds to the System, particularly funds that become available for distribution on a date subsequent to your receipt of the initial certification, that you require the System's director to provide you with a current certification that the monies requested by the System are still delinquent, and that the municipality has again been notified of its delinquency. In this way, prior to releasing any funds to the System, your office will be able to confirm that the delinquent amounts have not been paid to the System in the interim.
It is the responsibility of this office to opine and report upon the law as we find it, as set forth by the legislature, subject to and guided by appropriate rules of statutory construction. In reaching our determinations herein, we are guided by the following rules of statutory construction: Legislation is a solemn expression of legislative will. LSA-C.C. Art. 2. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. LSA-R.S. 1:3. The word "shall" is mandatory. LSA- R.S. 1.3. The law requires a fair and genuine construction of legislative acts, and a reasonable construction in light of the purpose of the act.Broussard v. F.A. Richard Associates, Inc., 732 So.2d 578(La.App. 3 Cir. 1999); writ denied, 744 So.2d 625. The objects the legislature has in view should be ascertained, and the interpretation adopted should be that which best harmonizes with such object. Bradley v. Swift Co., 119 So. 559 (La. 1928).
We trust this opinion answers your questions, and we remain,
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam
Attachments
xc: Ron J. Henson
James H. Napper, II
Virginia S. Eckert
Philip L. Capitano
[1] A copy of Attorney General's Opinion No. 93-399 is enclosed herewith and made a part hereof. That opinion determined that the Treasurer has constitutional and statutory authority to withhold the available funds of a political subdivision that is allegedly delinquent in its submission of retirement contributions, and to transfer such funds to the proper statewide retirement board. The conclusion reached in Opinion No. 93-399 is hereby affirmed.
OPINION NUMBER 93-399
Mr. Gregory N. Rattler Attorney General of Louisiana — Opinion RELEASED JUNE 7, 1993
15-A — CONSTITUTIONAL LAW 90-A-1 — PUBLIC FUNDS AND CONTRACTS 92-A-2(k) — RETIREMENT — School Board Employees' Retirement System CONST 3.16, CONST 7.10, CONST 10.29(E), R.S. 11:102, R.S.11:1202(A), R.S. 11:2225(A), R.S.11:887(A), R.S. 11:541, R.S. 17:992.1(A), R.S. 49:307, R.S. 49:314
Constitution and statutes grant State Treasurer the authority to withhold and transfer funds directly to the Boards of Trustees of retirement systems. Recalls Op. No. 89-455.
Mr. Gregory N. Rattler First Assistant State Treasurer P.O. Box 44154 Baton Rouge, Louisiana 70804
RICHARD P. IEYOUB
Dear Mr. Rattler:
You have requested an opinion of the Attorney General regarding the legal propriety of the State Treasurer (Treasurer) withholding funds due to political subdivisions allegedly delinquent in their submission of retirement contributions to their respective retirement boards. You specifically ask whether the transfer of funds by the Treasurer to the various boards is constitutionally permissible. You also reference Attorney General Opinion 89-455.
In your request, you refer to LSA-R.S. 17:992.1(A) as the statutory authority for certification by the Board of Trustees of the School Employees' Retirement System (Board) to the Treasurer, and her subsequent transfer of funds. This provision was superseded by LSA-R.S. 11:1202, as a result of the consolidation in Title 11 of all legislative enactments affecting retirement systems, plans, and funds within the State of Louisiana. Section 1202(A)(1) and (2) provides:
 "A. (1) Should any parish or city school board or other employer refuse to transmit either employer's contributions or member's contributions within fifteen days after its due date, the payment shall be delinquent.
 (2) Upon a certification to the state treasurer or the Department of Education by the board of trustees of the School Employees' Retirement System of Louisiana that a payment is delinquent, the state treasurer or the Department of Education shall deduct the amount thereof from any monies then available for distribution to or for the benefit of that parish or city school board, college or university, or vocational and technical school or other agency or employer and shall transmit said amount directly to the board of trustees." (Emphasis added.)
Provisions similar to the one above are found at LSA-R.S.11:2225(A)(11)(c) for the Municipal Police Employees' Retirement System, 11:887(A) for the Teachers' Retirement System, and11:541 for the State Employees' Retirement System. In addition, LSA-R.S. 11:102(B)(2)(a) provides:
 "(a) If the amount of employer contributions received for the fiscal year is less than the actuarially required employer contribution for the fiscal year, due to the failure of the legislature to appropriate funds at the required employer contribution rate, the difference shall be paid by the state treasurer from the state general fund upon warrant from the governing authority of the retirement system." (Emphasis added.)
You question the application of these statutory provisions mandating the withdrawal of moneys from the State Treasury in light of Article III, Section 16(A) of the Louisiana Constitution of 1974. It provides:
 "Section 16. (A) Specific Appropriation for One Year. Except as otherwise provided by this constitution, no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year." (Emphasis added.)
Similar restrictions on the withdrawal of funds from the State Treasury are found in Article VII, Section 10 and LSA-R.S.49:314. Further, LSA-R.S. 49:307, setting forth the duties of the Treasurer provides that she shall "(2) disburse the public money upon warrants drawn upon [her] according to law, and not otherwise;"
At first glance, the constitutional provisions would appear to traverse the statutory authorization for transfers to the retirement boards. However, the constitutional provisions at issue contain the proviso, "Except as otherwise provided by this constitution . . . ." Thus, they must be read in pari materia with Article X, Section 29(E) — the constitutional mandate that state and statewide retirement systems be actuarially sound. It provides, in pertinent part, the following:
 "(E) Actuarial Soundness. (1) The actuarial soundness of state and statewide retirement systems shall be attained and maintained and the legislature shall establish, by law, for each state or statewide retirement system, the particular method of actuarial valuation to be employed for purposes of this Section.
 (2) For public retirement systems whose benefits are guaranteed by this constitution as is specified in Paragraphs (A) and (B) of this Section:
 (a) The legislature shall, by law, determine and set all required contributions to be made by members . . . .
 (b) The legislature shall, in each fiscal year, by law, provide an amount necessary to fund the employer portion of the normal cost, which shall be determined in accordance with the method of valuation established under (1) above.
* * *
 (d) Amounts provided for under (b) and (c) above are hereby guaranteed payable, each fiscal year, to each retirement system covered herein. If, for any fiscal year, the legislature fails to provide these guaranteed payments, upon warrant of the governing authority of the retirement system, following the close of said fiscal year, the state treasurer shall pay the amount guaranteed directly from the state general fund." (Emphasis added.)
As can be gleaned from the above article, the legislature and the electorate have constitutionally mandated the enactment of those laws necessary to carry out the intent of both lawmakers and constituents that retirement systems be actuarially sound. The issue presented is whether the laws enacted constitute the "appropriation" and "warrant" necessary to comply with the constitutional and statutory provisions relating to the withdrawal of funds from the State Treasury.
In the case of The State ex rel. John A. Campbell v. O. B. Steele, Auditor, (Sup.Ct. 1885), 44 La. 222, 37 La. Ann. 353, the Louisiana Supreme Court had before it the issue of whether Act 28 of 1884 constituted an appropriation. That Act provided in pertinent part as follows:
 ". . . the amounts aforesaid is authorized to be paid from any money in the treasury, upon the warrant of the Governor . . . ." (Emphasis added.)
The state auditor refused to issue a warrant in Campbell's favor for his fees. Act 28 authorized the governor to draw his warrant in favor of Campbell to be paid out of any money in the treasury not appropriated. The governor had issued his warrant addressed to the auditor directing him to pay the plaintiff. The court cited the case of State v. Bordelon, 6 La. Ann. 68, which held that an act appropriating money from the treasury need not use the word "appropriate". The court opined that no formal or sacramental words are required to be used in an appropriation bill because the constitution does not prescribe any technical or precise language. (See also: Crane v. Fronmiller, 45 P.2d 955; Craford v. Hunt, 17 P.2d 802; Irons v. Harrison, 194 S.E. 749; State v. Zimmerman, 197 N.W. 823). The Supreme Court, in Campbell, affirmed the decision of the lower court which had issued a writ of mandamus to the auditor requiring him to make the payments.
Applying the Campbell reasoning to the instant situation, we note a close factual and legal analogy. Both Article X, Section 29(E)(2)(d) and LSA-R.S. 11:102(B)(2)(a) direct payment to the systems ". . . upon warrant from the governing authority of the retirement system."
The other statutory provisions direct payment ". . . upon certification to the state treasurer . . . by the board of trustees . . . ." (Emphasis added.) Black's Law Dictionary defines "warrant" as merely, "An order by which the drawer authorizes one person to pay a particular sum of money." The term "certification" as used in the referenced statutes would appear to mean a formal assertion, in writing, containing a truthful statement of debt. As used in the statutes under scrutiny, it is our opinion that a "certification" is tantamount to a "warrant".
Thus, under the holding of Campbell, an authorization by the legislature [e.g., Article X, Section 29(E)(2)(d) and LSA-R.S. 11:1202 (1) and (2)] given to a retirement board to obtain funds from the State Treasury upon its warrant and/or certification, constitutes an appropriation as envisioned by the Louisiana Constitution. See Attorney General Opinion No. 85-878. It then follows that the Treasurer should honor the warrant, make the necessary deduction, and transfer same to the appropriate board.
The authority to withhold and transfer should extend only to those funds which the Treasurer is authorized to distribute. Funds under the distributive power of another Department (e.g., Minimum Foundation Program Funds) should be withheld by that Department (i.e., the Department of Education).
To the extent Attorney General Opinion No. 89-455 conflicts with the opinions expressed herein, said opinion is recalled.
Trusting this opinion answers your questions, I am,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0086R
December 6, 2004 via facsimile 342-5008
MR. RON J. HENSON FIRST ASSISTANT STATE TREASURER OFFICE OF THE STATE TREASURER P.O. BOX 44154 BATON ROUGE LA 70804
Re: Request for Payment of Delinquent Contributions
Dear Mr. Henson:
LSA-R.S. 11:2227D(2)(a) provides for the collection of delinquent contributions due from participating municipalities of this retirement system. All participating municipalities were notified of an employer contribution rate change from 15.25% to 21.50% effective July 1, 2004. The City of Kenner has been invoiced for the difference owed for the months of July, August and September, 2004 but has not paid the amount due.
Therefore, on the basis of the above, we are requesting that you deduct $243,112.37 from any monies available for distribution to the City of Kenner and transmit a check in the same amount payable to Municipal Police Empoyees' Retirement System.
If you have any questions, please contract me at 929-7411.
Sincerely,
Virginia S. Eckert Director
cc: Mayor Philip L. Capitano